CAMP MFG. CO. v. PARKER.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1899.)

No. 273.

**1. SPECIFIC PERFORMANCE — EFFECT OF FAILURE TO STRICTLY PERFORM CONTRACT—FORFEITURE.**

Even when time is made of the essence of a contract, the failure of a party to comply with a condition within the particular time limited will not work a forfeiture nor defeat the right to enforce specific performance, where such condition is complied with within a reasonable time, and no circumstances have intervened to render it unjust or inequitable to grant such relief, but, on the contrary, it would be inequitable to withhold it.

**2. CONTRACTS—ENFORCEMENT OF FORFEITURE—NOTICE.**

Forfeitures not being favored in equity, where one party to a contract is required by its terms to give notice to work a forfeiture, he will be held to a literal compliance with such provision, or a forfeiture will not be enforced.

91 F.—45

3. SAME—SUFFICIENCY OF NOTICE.

   Defendant contracted for the sale of standing timber, and subsequently
   entered into a supplemental agreement with plaintiff, which had become
   the owner of the contract, extending the time for the removal of timber
   which had been paid for, in consideration of certain annual payments,
   to be made by plaintiff "at the beginning of each year" in advance, the
   agreement providing that, on a failure to make any payment when due,
   plaintiff should be given a notice of 10 days, and, if the payment was
   not made within that time, the agreement should terminate. Early in
   January, defendant wrote plaintiff, requesting it to ascertain the amount
   of a payment due, and to send a check for the same, and a few days later
   again wrote to the same effect. Neither letter contained any reference
   to a termination of the agreement, but they asked information in regard
   to the number of acres of the timber as shown by a survey, and upon
   which the amount of the payment depended. Plaintiff was unable at the
   time to ascertain the amount as shown by the survey, and delayed an-
   swering, but on February 7th sent a check for an amount slightly in ex-
   cess of the amount due. After receipt of the check, defendant determined
   to insist on a forfeiture of the contract, and returned the check. *Held*,
   that the letters of defendant were insufficient as notice to work a for-
   feiture, under the terms of the contract.

Appeal from the Circuit Court of the United States for the East-
ern District of North Carolina.

This was a suit in equity by the Camp Manufacturing Company
against Henry Parker to enforce the specific performance of a con-
tract. From a decree dismissing the bill, plaintiff appeals.

B. B. Winborne, for appellant.

Francis D. Winston, for appellee.

Before GOFF, Circuit Judge, and PAUL and WADDILL, District
Judges.

PAUL, District Judge. This cause is here on appeal from the
circuit court for the Eastern district of North Carolina. The ap-
pellant was the plaintiff, and the appellee the defendant, in the
court below. The record shows that on the 9th day of January,
1889, the defendant, Henry Parker, Frusa, his wife, A. W. Early and
Eugenia, his wife, entered into a contract with W. P. Taylor and
James T. Brinkley, by which they sold and conveyed to said Taylor
and Brinkley all their right, title, and interest in and to all pine
trees growing and being upon a certain tract of land in Bertie coun-
ty, N. C., containing 240 acres, more or less. On the same day, the
said Henry Parker and wife entered into two contracts with the said
Taylor and Brinkley, by which said Parker and wife sold their right,
title, and interest in the trees on two other separate and distinct
tracts of land. The three contracts were the same in substance and
form, and all contained the following provision: "To have and to
hold the same unto W. P. Taylor and Jas. T. Brinkley, the said par-
ties of the second part or their assigns, for the term of five years
from the date hereof," with the exclusive privilege of entering upon
the land for the purpose of removing the trees. Subsequently, the
plaintiff, the Camp Manufacturing Company, became the owner of
all the interests and privileges of Taylor and Brinkley held by them
under the three contracts above mentioned.

On the 30th day of May, 1893, after the plaintiff had acquired the

interests of Taylor and Brinkley in the three contracts, the defendant, Parker, and his wife, made with the plaintiff a contract for an extension of the time fixed in the contracts with Taylor and Brinkley within which the timber was to be removed. Following is the contract:

"This agreement, made May 30th, 1893, by and between Henry Parker and wife, Frusa, Bertie county, North Carolina, parties of the first part, and the Camp Manufacturing Company, a corporation chartered under and by the laws of Virginia, and duly organized, party of the second part, witnesseth: That the parties of the first part have covenanted and agreed with the party of the second part that it, the said party of the second part, its successors and assigns, shall enjoy all the rights and privileges on and over the lands acquired by virtue of a contract made between the said parties of the first part and W. P. Taylor, which contract was made in January, 1889, and duly recorded in the office of the register of deeds for Bertie county, and by the said Taylor transferred to the party of the second part for five years, upon the condition that the said Parker be paid a sum of money equal to the interest at 8 % at the beginning of each year in advance on the purchase money named in the contract with Taylor, above referred to, beginning from the expiration of the time for cutting and removing of timber mentioned in contract aforesaid. It is understood that, if the party of the second part fails to pay any amount when due, it shall have a notice of ten days, and if, after the expiration of the ten days, it remains unpaid, this contract is at an end."

In pursuance with this contract, the plaintiff, on the 17th of January, 1894, paid the defendant the sum of $116.48, the amount claimed by him under the agreement, and for which defendant sent the plaintiff a receipt February 15, 1894. The next payment was due January 9, 1895, and on the 10th of that month the defendant, Parker, wrote the plaintiff as follows:

"Aulander, N. C., Jany. 10, 1895.

"Camp Manufacturing Co., Franklin, Va.—Gentlemen: I write to ask you to please calculate the interest on the amount you owe me for all timber sold you, and send me a check for the same. You wrote me last year, when you sent check, that my calculation did not correspond with the calculation in your office. Please inform me of the difference. You will remember that I sold the Axum Peel tract at $5 per acre, but I never have known how much it run out, and please inform me how many acres it plotted out; if so, you will oblige me.

"Yours, etc.,                                    Henry Parker."

The plaintiff did not reply to this letter, and on the 22d of January, 1895, the defendant wrote again to the plaintiff, which letter the evidence shows is lost, but its contents are shown by the testimony of the appellee, Parker; and in this second letter he gave no notice or intimation that he intended to enforce the forfeiture. In answer to the question, referring to this letter, "State, if you can, the contents of your letter to the Camp Manufacturing Company demanding payment of your timber," he answers, "I wrote them my money was due, and I wanted it. The letter was dated January 22, 1895."

On the 7th of February, 1895, the plaintiff sent the defendant a check for $116.48, and wrote him as follows:

"Franklin, Va., Feb. 7th, 1895.

"Mr. Henry Parker, Aulander, N. C.—Dear Sir: Yours of Jan. 10th came duly to hand, and we would have sent check sooner, but have been waiting to try and give you the information asked for, but now find that we will

have to see our Mr. Rogers, before giving you the information asked for. We now inclose our check for $116.48; this being the same as paid you last year. Should we find upon investigation that you are entitled to any more, will send you check for that. Trusting this will be satisfactory, we remain

"Yours, truly,    Camp Manufacturing Co.,
                     "By R. J. Camp."

This check, Parker, on the 20th of February, 1895, returned to the plaintiff, with the following letter:

"Gentlemen: I have received your letter inclosing check. I return the check. Under the terms of our contract, you have forfeited all right to the timber, and you must not undertake to cut it without further agreement. You received my demand of the 10th, and again of the 22nd, and did not remit within ten days. I refer you to the contract of extension. I will, however, give you a chance to enter into another agreement with me if you wish it.

"Very respectfully,    Henry Parker.
"Camp Manufacturing Co., Franklin, Va."

It will be observed that the contract of May 30, 1893, between the plaintiff and defendant and wife for an extension of time, refers to a contract "made between Parker and wife, parties of the first part, and W. P. Taylor, which contract was made in January, 1889." It does not in terms embrace and describe the three contracts hereinbefore designated as made in January, 1889. Because of this omission in the contract of extension, counsel for the defendant insists that the contract of extension is void for indefiniteness, and that the bill should be dismissed on that ground. This contention cannot be sustained. Parker and wife were parties grantor in all three of the deeds of January 9, 1889, and Taylor was one of the grantees in all three of the deeds. The basis of the annual payment of 8 per cent. on the purchase money named in the contract with Taylor was the whole of the purchase money paid under the three contracts for the timber conveyed, which amounted to $1,456, the interest on which, at 8 per cent., amounted to $116.48. The parties dealt on the basis of the three contracts. The defendant got the benefit of the three contracts, and no question was ever raised as to what timber was included in the extension contract of May 30, 1893, until after the bringing of this suit. The whole correspondence and every act of the parties shows that all of the timber conveyed in the three contracts of January 9, 1889, was intended to be embraced in the contract of extension. This being the understanding of the parties, the defendant, having gotten the benefit of the agreement under this understanding, is estopped from repudiating a contract under which the parties acted, and the effect of which they mutually understood.

The amount of interest claimed by the defendant was 8 per cent. on $1,456. The record shows that according to a survey made of the three tracts of land by John F. Newsom, for Taylor and Brinkley, after they had purchased the timber, the purchase money that was paid for the same was $1,426.92, the interest on which at 8 per cent. would be $114.15. This difference is what led the plaintiff to say, in its letter of January 17, 1894, in sending its check to the defendant for $116.48: "This amount does not exactly agree with the papers which we have in the office, and we will thank you to advise

us just what lots, how many acres, and at what price you figured this interest." The record does not show that there was any answer by the defendant to this inquiry, and the amount of interest really due was an open question when the second payment became due, January 9, 1895. Hence it was that the defendant, in his letter of January 10, 1895, asks the plaintiff to "calculate the interest on the amount you owe me for all timber sold you, and send check for the same. You wrote me last year when you sent check that my calculation did not correspond with the calculations in your office. Please inform me of the difference. You will remember that I sold the Axum Peel tract at $5 per acre, but I never did know how much it run out, and please inform me how many acres it plotted out; if so, you will oblige," etc. The court below held that this letter was sufficient notice, under the contract of extension of May 30, 1893, to work a forfeiture of the right of the plaintiff to cut the timber for which the defendant had been paid in full. It took no notice of the second letter, January 22, 1895. We cannot concur in this view of the circuit court. We think that, in so grave a matter as the forfeiture of a valuable property right, what is claimed here to be a notice is entirely insufficient. Neither of the letters demands of the plaintiff a sum certain, or contains an intimation to the plaintiff that, unless the money is paid within 10 days from the time the request is made that the plaintiff ascertain the amount due the defendant, and send a check for the same, the defendant will enforce the forfeiture. So far from the first letter being a demand for the payment of any certain amount due, and a notice of intention on the part of the defendant to enforce the forfeiture, it is simply a request that the plaintiff ascertain the amount due, and send a check for the same. He states that he sold the Peel tract for $5 per acre, but never knew how much it ran out, and asks the plaintiff to inform him how many acres it contained. The evidence in the record shows that the plaintiff endeavored to obtain this information for the defendant through one of its agents, named Rogers; that, owing to the absence of this agent, it was unable to procure the information asked for by the defendant, and on the 7th of February, 1895, sent a check to the defendant for $116.48, the same amount claimed by the defendant in the year 1894. The evidence shows that, by due course of mail, this check reached the post office of the defendant on the 8th of February, and the record shows that he returned it on the 20th of the same month.

There are certain clearly defined and fixed principles touching the doctrine of forfeiture, which we will apply to the facts presented by the record in this case.

Tate v. Crowson, 28 N. C. 65, was a case where a lease was given upon condition that the lessees, at the end of each year, should give bond and surety for the rent of the succeeding year. The contract contained this condition:

"And, in case they [the lessees] should fail at the end of any one year to give such bond and security, then this lease to cease and terminate, and the said Thos. R. Tate shall have the right to enter into the premises, and take the same into his possession."

At the expiration of one year, the lessees failed to give such bond and surety; but the lessor was absent, and did not demand it. Held, that no forfeiture was incurred, it being the duty of the lessor to make a demand. The court said:

"But the law leans against forfeitures, and is very strict in requiring a lessor to do everything literally, at the time and place needful to work it. The lessor is not compelled to avail himself of a forfeiture, but he may waive it; and therefore, where the agency of the landlord is involved in any way in the act which is to work or prevent a forfeiture, he ought to so act as to make it appear clearly that he means to insist upon the forfeiture, and thereby enable the other party, by compliance in time, to save his land."

In Insurance Co. v. Eggleston, 96 U. S. 572, the supreme court says:

"We have recently, in the case of Insurance Co. v. Norton, Id. 234, shown that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture or an agreement to do so on which the party has relied and acted."

It is insisted on behalf of the defendant that time is of the essence of the contract of May 30, 1893, and this appears to be the view taken by the circuit court. We do not deem it necessary, in our view of the case, to discuss this question. In Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, where the same point was made and insisted upon, the supreme court said:

"But there are other principles, founded on justice, that must control the decision of the present case. Even where time is made material by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to a specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, may, and of necessity must, often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions."

We deduce from these decisions that a party (in a case like this) seeking the enforcement of a forfeiture must, where notice is required, do everything literally at the time and place needful to work it; that, where he indicates an election to waive a forfeiture, the court will not enforce it; and that, even where time is made material, on the failure of one of the parties to perform the condition, where the condition has been subsequently performed without unreasonable delay, the court will not enforce a forfeiture.

We think it clearly appears from the record that the defendant waived his election to enforce a forfeiture at the time he might have done so by the terms of the agreement. Instead of the letter of January 10, 1895, being a notice which informed the plaintiff that, unless it paid the interest due within 10 days, the forfeiture would be enforced, it amounted to nothing more than a request that the plaintiff ascertain the amount of interest due, and send a check for the same. As further showing a waiver of the forfeiture, the defendant, on the 22d of January, 1895, sent a second request of the same tenor as that made in the letter of the 10th of the same month.

Pending the efforts of the plaintiff to obtain the information asked by the defendant, the plaintiff sends the defendant a check for the amount claimed by the defendant the previous year.   This check, sent the 7th of February, was returned on the 20th to the plaintiff, with a letter informing the plaintiff that the defendant proposed to enforce the forfeiture.   When the defendant received the check from the plaintiff, he had not elected to enforce the forfeiture.   This is shown by the following admission in the record:

"It is admitted that Henry Parker, the second day after receiving said check, consulted F. D. Winston, his attorney, at his home in Windsor, as to his rights under his contract; and, upon being advised that the contract was at an end by a failure of the company to remit within ten days after notice, he wrote the company, and returned the check."

It is thus seen that, at the time the defendant made his election to enforce the forfeiture, the plaintiff had complied with defendant's request to send him a check, and had fully paid, if it had not over-paid, the amount due the defendant; and that, under the circumstances, without unreasonable delay. . Certainly, no injustice or injury was done the defendant by the short postponement of payment. On the other hand, the forfeiture claimed involves valuable property rights of the plaintiff.   It is not the termination of a naked lease, without loss to the lessee, but involves the loss to the plaintiff of a large quantity of valuable timber, for which the defendant had been fully paid before the parties made the contract of extension.   To permit the defendant to enforce his claim of forfeiture, without having given the notice provided for in the contract of extension, will be to allow him to take possession of property for which he has received value, and the title to which is vested in the plaintiff; and this, on a contract having no other purpose than to give the plaintiff further time within which to remove the timber it had purchased, and for which it had paid.   To do this would be unjust and inequitable to the plaintiff.   The decree of the circuit court will be reversed, and the cause will be remanded, with directions to the court below to proceed in conformity to this opinion.   Reversed.