### RICKARD et al. v. TAYLOR et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

No. 446.

1. SPECIFIC PERFORMANCE — CONTRACT — OFFER CONDITIONED ON PAYMENT WITHIN LIMITED TIME.

Defendants, after negotiations for the sale to complainants of the timber on a tract of land, but which had not resulted in any contract binding on them, executed a contract of sale of the timber, which they forwarded to a bank, with instructions to deliver the same on payment of a specified sum by complainants within a certain number of days, and to return the contract if payment was not made within such time. The time having expired, the contract was returned by the bank. Thereafter complainants deposited the money and demanded a conveyance of the timber, which was refused. Held, that the deposit of the contract by defendants was an offer, only, to which they had the right to attach any conditions, and that, not having been accepted by the payment of the money within the time limited, no contract was created which a court of equity could specifically enforce.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

The facts in the cause may be briefly stated as follows:

Appellants, residents of the state of Virginia, owned a large tract of land in Randolph county, W. Va.; and on the 31st of October, 1900, W. B. Maxwell, an attorney at law and real estate broker, wrote them, proposing to purchase the timber upon their property, to which they, on the 15th of December, 1900, replied, saying that they would price the timber to him at $8,000. Subsequently, on the 28th of January, 1901, said Maxwell wired appellants if land was still for sale (meaning, evidently, timber), and, if so, to name as liberal terms for payment as they could, and appellants wired, "Will take eight thousand dollars for timber, for terms see letter;" and by letter the terms named were one-half cash, and the remainder in one and two years, with interest; deferred payments to be satisfactorily secured. Five years was given for the removal of the timber, and, by subsequent letter of the same date, appellants reserved the locust trees upon the tract of land.

Upon receipt of the telegram, and, it seems, before the receipt of the letters, Maxwell, on the 31st of January, 1901, undertook to enter into an agreement with appellees, styling himself as agent for appellants, for the sale of the timber at the price of $12,000, of which sum $3,000 was to be paid in cash, $3,000 in 9 months, $3,000 in 18 months, and $3,000 in 24 months, with interest on the deferred payments from date, upon the execution of which they were to have the immediate possession of the land, with the right to cut and remove the timber therefrom; the same to be removed within a reasonable time; and an average of not less than 750,000 feet a year was to be removed; and with the further provision that the cash of $3,000, with the notes for the deferred payments, and also the said contract, should be deposited with the National Bank of Elkins, W. Va., to be by said bank held until the parties of the first part (the appellants here) executed to the parties of the second part (the appellees) a formal contract for said timber, on the terms and conditions stated in said agreement; said contract to give the boundaries of the land. Maxwell thereupon wrote appellants, advising them of the receipt of the message, of appellees' inability to wait for receipt of letter, and that they "agree to take the property (timber only) and pay $3,000.00 cash, $3,000.00 in nine months, with interest, and the residue of your purchase money within eighteen months, with interest, and agree to cut not less than seven hundred and fifty thousand feet per year on an average, and remove the whole of the timber as soon as practicable." In this letter the full purchase price was not named, and, in discussing the question of terms, Maxwell further wrote: "If you are not willing to accept the terms left by the parties, I will try to have them come to your terms, which, as I see them, are not materially different from yours." And he further inquired: "If you do not care to accept the terms I have made, allow me to ask what discount you will be willing to stand for all cash." Under date of February 2d, appellants wrote Maxwell as follows:

"In my letters answering hurriedly your telegrams it was impossible to mention detailed conditions which necessarily have to be embodied in the contract or deed, which I now proceed to do more fully.

"First. Our price to you is $8,000.00 (eight thousand dollars) net to us. No commissions to be paid by us for effecting the sale.

"Second. Terms cash or its equivalent."

"Third. Payments ½ cash in hand, or $4,000.00, residue in one and two years, with interest from date of sale, purchaser to execute bond with approved security.

"4th. We reserve all locust trees.

"5th. The purchaser to keep fencing closed as he may find them, so that we can continue to graze the land without interruption.

"1st. We to make just such deed as your court makes us, which, I believe, is one of general warranty of title.

"2. We to grant necessary provisions of egress, ingress, &c.

"3rd. If your parties prefer we might extend the time for removal of the timber, provided they will in good faith remove it earlier if possible.

"4th. With proper security for deferred payments we would also try to accommodate them as to terms of payment."

To which Maxwell, under date of February 5th, replied:

"Your favor of the 2nd inst. at hand. I am sure there will be no difficulty in arriving at a full and complete agreement as to everything you suggest unless it is the locust timber. If it should turn out there is any considerable quantity of it on the land, the parties may insist upon having it. I will not prepare formal contract for you all until the full $3,000.00 has been deposited in the bank, as per my agreement with them, which I think will be done very soon, as was agreed. I have written the parties as to the locust timber."

The correspondence, chiefly conducted by W. H. Rickard, one of appellants, with the said Maxwell, was continued; the bone of contention being particularly the reservation of the locust timber, and the security for the deferred payments upon the property; the desire being that personal security in the state of New York should be accepted for the same. And in the course of the correspondence, Maxwell, on the 19th of February, enclosed a contract for appellants to sign, which they declined to do, it not being according to the terms specified; and, besides, a possible difficulty had arisen in the meantime as to their possession of the property, for which they felt Maxwell was responsible. They thereupon imposed a further condition—that they should not deliver the property until they received possession of the same, and that the purchase price must either be paid in cash, or security given for the different payments, acceptable to the vendors, resident in West Virginia or Virginia. In Maxwell's letter, inclosing this contract, he wrote: "Herewith please find contract, which I have prepared for you all to execute. By the same mail I will send a copy of this contract to the purchasers, with request to wire me if not satisfactory in any particular, and I suggest that you do not execute for a day or two until I have had time to hear from them. I am confident the paper, as I have prepared it, will be satisfactory to them. John Fenderson, of Oswego, N. Y., will be the endorser on the notes unless they determine to pay all cash." Thus clearly showing that neither party had reached any definite conclusion as to the terms of the sale. On February 26th, Maxwell wrote, saying that he had thought over the whole situation, that the one serious demand seemed to be that the security should be given in Virginia or West Virginia; that he did not think the appellees could give such security; that they could give New York security, which was good; that they could not pay all cash until August, or possibly later—and said: "I find that I can negotiate the notes, raise the money and pay you in full if you all will endorse the notes, without recourse against you. I will have Mr. Warfield, the cashier, send them to you for endorsement, the same to be delivered over to me upon the payment to you of $8,000.00."

Appellant Rickard thereupon, under date of February 28th, wrote, advising Maxwell that, in accordance with his suggestion, they had signed and returned contract to the Elkins Bank, with the directions stated in a letter to him, a carbon of which was inclosed Maxwell, the substance of which was that the contract should be held by the bank, with the notes referred to in Maxwell's proposition, which were to be sent to Rickard for indorsement, and upon the same being returned they were to be delivered to Maxwell upon the payment by him, or the parties for whom he was acting, of the sum of $8,000 net to Rickard, which was to be forwarded by the bank to Harrisonburg by safe bank exchange, and immediately upon such remittance the contract inclosed was to be delivered to Maxwell, with this proviso: "These directions to you are to stand firm and stable in case the said notes are received by us within one week from this day, and upon the further condition that the remittance of $8,000.00 shall be received by us within one week from the receipt by you of the notes returned with our endorsement." Maxwell subsequently, on March 5th, wrote, making complaint as to the terms of the contract as signed and inclosed to the bank; and thereupon appellants again modified contract, and on the 7th of March forwarded a new contract, to be substituted in lieu of the one sent on the 28th, the old one to be returned to them; again stipulating that the same should be delivered to Mr. Maxwell upon the payment on their account by him within one week from the receipt of the notes, which were to be forwarded within a few days, the sum of $8,000, with the further stipulation that "in the event you do not receive the notes from us within ten days, which are to form a part of the delivery of the contract herewith enclosed, you will kindly return the con-

tract herewith handed you." On the same day (March 7th) Warfield, cashier, forwarded to appellants the notes for indorsement, which on the 11th they returned to him, as contemplated by the letters of February 28th and ·March 7th, which notes were received at the bank on March 12th, and there held until March 19th, when the cashier of the bank wrote appellants as follows: "According to instructions contained in your letter of March 7th, in which you stated we were to return to you after seven days, the agreement which you made with William Taylor and George F. Fenderson, I beg to enclose the same herewith. Please acknowledge the receipt. This agreement has been examined by W. B. Maxwell, and he retained a copy of the same." The contract returned was Exhibit B, filed with the bill, and Maxwell knew of the return of the same, and made no objection thereto. On March 27th, eight days afterwards, the money was deposited, and Warfield, cashier, wired appellants: "Eight thousand dollars deposited by Taylor and Fenderson. Shall I send?" To which Rickard replied by wire, dated March 28th: "Do not send money. Deal off. See letter to Maxwell." Maxwell, after the return of contract, on the 23d and 24th of March, wrote Rickard further in reference to the sale, in which letter he made no pretense that the contract had been entered into, and in which he said, referring to a possible lawsuit in reference to the possession of the property, and recognizing the fact that this contract had not been entered into, "Our court comes in May, and I have considerable confidence that I can get the parties to wait until June 1st to close the deal," to which letter, on March 26th, appellants wrote Maxwell: "In so much as our terms set out in our letter to Mr. Warfield, cashier, of which a copy was furnished you, was not complied with in the time limited in the terms of the escrow, we regard the negotiations for the sale of this timber as closed, and in view of the recent developments, particularly the attitude of Mr. Snyder himself [Snyder being the person contesting their possession of the property], we deem it unadvisable to reopen negotiations for the sale of the timber." On March the 27th Maxwell wired: "Warfield has your money. Please send contract. Wire answer." To which Rickard replied on the 28th: "Wrote you on the 26th inst., declining to reopen negotiations." And thereupon the bill in this cause was filed in the circuit court of Randolph county, W. Va., asking for specific performance of either Contracts A or B, filed with the bill. The cause, at the instance of the defendants, was in due time removed from the state court into the federal court, after which the defendants answered the bill, and denied having entered into the contract; and the cause was subsequently duly matured, the evidence taken, and upon full and final hearing the lower court decreed the specific performance of the contract as embodied in Exhibit B, filed with the bill, from which decree this appeal was taken.

John T. Harris and Wingfield Liggett (Sipe & Harris and D. C. Westenhaver, on the brief), for appellants.

Melville D. Post (McGraw & Post, on the brief), for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and WADDILL, District Judges.

WADDILL, District Judge (after stating the facts as above). The question to be determined by the court is, what is the effect of the two alleged contracts, in the light of the facts and circumstances surrounding their execution, as shown by the letters and telegrams of the parties to the transaction at the time? The court below decreed specific performance of Exhibit B, making no mention of Exhibit A, from which it may be inferred that at least that instrument was not deemed to be a valid and binding contract between the parties. In passing, it may be said that this conclusion was manifestly correct, as upon the face of the instrument it appears that it was not in-

tended to be the actual contract to be entered into; and, besides, it is quite apparent that Maxwell, in the transactions in question, was not the agent of the owners of the timber to be sold, and had no authority to sign a contract in their behalf, or to impose upon them terms and conditions in respect to the sale of their property.

As to Exhibit B, signed by the parties themselves, and decreed by the court below to be a valid contract, a more difficult question is presented, and its correct determination depends upon the effect to be given to the limitation of time placed by the vendors at the time of the deposit in escrow of the paper, within which it was to be accepted, or the payment of the purchase price of the property sold was to be made, and whether or not at that time they had the right to impose such conditions. Ordinarily the question of the precise time within which money may be paid is immaterial, where time is not the essence of the contract, and there has been no specific direction made in that regard; that is to say, where a contract has been entered into between the parties, with the exact time of payment not specified, or, if actually specified in the first place, arbitrary and unreasonable limitations as to when payments shall be made, or, in the latter, the failure to pay on the precise day designated, will not be allowed to work a forfeiture of such contract, or of rights arising thereunder, provided the condition can be subsequently performed without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The cases of Cheney v. Libby, 134 U. S. 77, 10 Sup. Ct. 498, 33 L. Ed. 818, and Camp v. Parker, 34 C. C. A. 55, 91 Fed. 710 (the latter a decision of this court), referred to by appellees, are illustrations of this doctrine. In each of the cases cited a contract had been entered into, and the questions determined related to the effect of failure to comply with the provisions of the contract. The present case, as we view it, turns upon whether or not the vendors entered into any contract save the one filed as Exhibit B with the bill, and delivered conditionally to the bank, or so bound themselves as to prevent them from imposing any condition or limitation as to time of acceptance of contract and payment of money thereunder at the time of delivery of said Exhibit B. If they did not, then, confessedly, they had the right to impose such conditions as they saw fit, as to how, and the time within which, they should sell their timber. Story's Equity Juris. § 777a, and cases cited. A careful examination of all the letters and telegrams between the parties shows that the vendors neither authorized the execution of the paper filed as Exhibit A, nor gave authority to Maxwell to sign any paper, or impose upon them any terms or conditions whatever, in reference to the sale in question, and that, so far as they are concerned, they were neither bound by or committed to any proposition of sale at the time of the deposit of the paper Exhibit B with the bank, and that on that day they had the right to enter into, or not, as they thought proper, with the appellees, or with Mr. Maxwell on his own account, or in their behalf, an agreement to sell their timber; that, being in this position, they could impose, as of right, such conditions and limitations as to terms

of payment or otherwise as they saw fit. The contract inclosed by them to the bank was a unilateral contract, in which the vendors stipulated that payment should be made within a specific time, or the paper signed by them, whatever it may be termed—whether an option to buy or a contract of sale—should be returned to them; and it was so returned at the expiration of the time, and some eight days before the appellees offered to pay for the property.

Pomeroy on Contracts, § 387, in discussing when, and when not, time becomes essential in the performance of unilateral contracts, says:

"Where the contract is really an offer on one side, with a provision that this offer must be assented to and accepted, when a mere acceptance is contemplated, or payment must be made, when payment was the act of acceptance contemplated, at or before a specified date, then, of course, the act of assent or of payment must be done within the prescribed time, and time is, from the very form of the contract, essential. If, therefore, a vendor agrees to convey if payment be made at or before a given date, or if an option is given, which is to be accepted by payment within a given time, then the time of the payment is certainly essential. In fact, payment is a condition precedent to the vesting of any right in the vendee."

The case of Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479, in its essential features, is similar to the one at bar, and would seem to be conclusive of the controversy at issue here. There, by agreement of the 14th of May, 1881, R. W. Waterman agreed that at any time within 12 months from that date, upon demand, he would execute to J. S. Waterman a good and sufficient deed to an undivided $^{24}/_{100}$ of certain mines, with improvements thereon, or to be placed thereon. J. S. Waterman did not demand a deed within the year, but in March, 1883, assigned the agreement to Abbie L. Waterman. After the death of J. S. Waterman, she brought a suit for specific performance, and recovered; the lower court holding that the agreement passed a present interest, and required a deed to be made on demand at any time, before or after the expiration of one year. Upon appeal the lower court was reversed, the Supreme Court holding that the conditions of the contract were not fulfilled within the time specified therein. Mr. Justice Harlan, speaking for the court, approved the following quotation from Potts v. Whitehead, 20 N. J. Eq. 55, as the correct rule:

"There can be no question but that, when an offer is made for a time limited in the offer itself, no acceptance afterwards will make it binding. Any offer without consideration may be withdrawn at any time before acceptance, and an offer which in its terms limits the time of acceptance is withdrawn by the expiration of the time."

And in discussing the question as to when and when not time was the essence of the contract, Mr. Justice Harlan further says:

"The rule is well expressed in Lord Ranelagh v. Melton, 2 Drewry & Smale, 278, 281, where it was said: 'No doubt, if an owner of land and an intending purchaser enter into a contract, constituting between them the relation of vendor and purchaser, and there is a stipulation in the contract that the purchase money shall be paid and the contract completed on a certain day, this court, in ordinary cases, has established the principle that time is not of the essence of the contract, and that the circumstances of the day fixed

for the payment of the money and the completion of the purchase being past does not entitle either party to refuse to complete. On the other hand, it is well settled that, when there is a contract between the owner of land and another person, that, if such person shall do a specified act, then he (the owner) will convey the land to him in fee, the relation of vendor and purchaser does not exist between the parties unless and until the act has been done as specified. The court regards it as the case of a condition on the performance of which the party performing it is entitled to a certain benefit, but in order to obtain such benefit he must perform the condition strictly. Therefore, if there be a day fixed for its performance, the lapse of that day without its being performed prevents him from claiming the benefit.' "

Reference may also be had, as illustrative of this doctrine, to Stitt v. Huidekoper, 17 Wall. 384, 21 L. Ed. 644; Insurance Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; and other cases from the state and federal courts might be cited almost without number.

For the reasons herein mentioned, the decree of the lower court will be reversed, and the cause remanded to that court, with instructions to enter a decree dismissing the complainants' bill, with costs. Reversed.