KESSEL and wife, Respondents, vs. KESSEL and wife, Appellants.

*February 28 — March 17, 1891.*

*Reformation of written instruments.*

Where, in an action for the reformation of a written agreement and of a mortgage given to secure performance thereof, it appeared by the testimony on the part of the plaintiffs that it was verbally agreed between them and the defendant that, in consideration of their conveying to him their farm, he should support them at the old home during life, and pay them an annuity of $150 per year, or, in case they should become dissatisfied with his treatment, he should pay the annuity and furnish them with certain provisions, etc., and they should have the option to leave his care, and, in that case, he should pay them $2,500, and the whole agreement was to be put into writing and the performance thereof secured by a mortgage, but the papers were prepared in English, not in accordance with the directions of the plaintiffs, and were not understood by them, they being aged Germans, unable to understand that language, and did not contain the entire agreement, nor did the mortgage secure the payment of any sum except the $150, in case of disagreement, leaving entirely unsecured the performance of the other stipulations and the payment of the $2,500; and such testimony as to the directions given was corroborated by the notary who drew the papers, and was not denied by the defendant,— *held*, that the written agreement and the mortgage should be reformed so as to express the actual intention of the parties.

APPEAL from the Circuit Court for *Washington* County. The action is to reform certain written instruments. On January 24, 1887, the plaintiffs, *Peter Kessel* and wife, con-

veyed to their son, the defendant *Peter Kessel, Jr.*, their farm in Washington county, containing 140 acres of land, on which they had resided for twenty-five years, together with certain personal property thereon. The farm was worth $8,000, and the personal property $1,000, and was all the property the plaintiffs owned. Plaintiffs were each about seventy-five years of age, and infirm in health, when they made this conveyance, the plaintiff *Peter* being also very deaf. They were Germans, and neither of them could speak or understand the English language. *Peter, Jr.*, was then thirty-three years of age, and, while not an imbecile, was weak in intellect and quite deaf, and was dependent upon his father to manage his business affairs. He had always lived with his parents, and worked on their farm without other compensation than his maintenance.

The consideration for such conveyance was attempted to be expressed in a written agreement executed at the same time by the father and son, and in a mortgage executed to the plaintiffs by the son on the lands so conveyed, which purports to have been given as security for the performance of a stipulation in the agreement to pay the plaintiffs an annuity of $150 during their joint lives, and one half that sum to the survivor of them. It does not purport to secure any other stipulation in such agreement.

The agreement, as written and executed, binds *Peter, Jr.*, his heirs and assigns, to maintain his parents during their lives; to do everything to make them comfortable; to provide them two specified rooms in his house; and to take the best care of them as long as they should live. It also contains the following stipulation: " The said parties of the second part [the plaintiffs] also agree, for the consideration of $2,500, by note secured by mortgage, now held by said second parties against said first party [*Peter, Jr.*], that, if said first party do his duties as above mentioned, said note and mortgage is to be null and void." It further provides

Kessel and wife vs. Kessel and wife.

that, in case of disagreement between the parties, or if the plaintiffs should become dissatisfied with the treatment they receive from their son, the latter should pay them annually, on December 1st, $150, and furnish them fuel prepared for use, and certain specified articles of food, and also keep any horses and cows they may have. In case of the death of either plaintiff, the survivor was to have one half the money and articles thus to be furnished.

At the same time *Peter, Jr.*, gave his note for $700 to each of two unmarried sisters, and afterwards paid the plaintiffs $150 on or about December 1, 1887, and $150 on or about December 1, 1888. The plaintiffs remained with their son until August, 1889, when, becoming dissatisfied with the treatment they received from him and his wife (he having married after such agreement was executed), they left his house, and have not since lived with him or received any support from him. The agreement and mortgage are written in English, and the plaintiffs did not learn any of their contents, further than was explained to them by the notary when the same were drawn and executed, until they left the house of their son, when the plaintiff *Peter, Sr.*, had them examined, and then first learned their actual contents. He thereupon brought this action, alleging in his complaint that the instruments do not express the contract made by the parties in certain specified particulars, and praying that they be reformed to express the contract as actually made.

The defendants allege in their answer that the agreement and mortgage contain the contract of the parties as it was made, except as to the two $700 notes which were given to the sisters pursuant thereto, and except that the mortgage should have been drawn to secure the performance of all the stipulations contained in the agreement to be performed by *Peter, Jr.* The answer also contains a counterclaim for the two payments of $150 each, in which it is alleged that

*Peter, Jr.*, was informed by one of his sisters that the agreement required him to make such payments, when in fact it does not, and that he was misled by such statement of his sister. An accounting is prayed, and that such payments. be allowed *Peter, Jr.*

It is unnecessary to state the allegations of the complaint as to what was the real contract of the parties, for that is stated more fully in the findings of fact. Such findings contain the facts above stated, and on the subject of the actual agreement and understanding of the parties are as follows: "The plaintiffs were to convey said real estate and personal property to the defendant *Peter*, and in consideration of the said conveyance the said defendant *Peter* was to give his promissory notes in the sum of $700 to each of two daughters of the plaintiffs, payable three years after said date, with interest at the rate of five per cent. per annum, and to enter into an agreement with the plaintiffs to support them during the term of their natural lives, care for them in case of sickness, and in addition thereto to pay to them the sum of $150 per annum, the said annuity to be due and payable on the first day of December in each and every year; that in case of a disagreement between them, or in case that said plaintiffs should become dissatisfied with the treatment received by them at the hands of said defendant *Peter*, then, and in such case, said defendant *Peter* was to pay said plaintiffs said sum of $150 annually, and furnish them with the provisions, rooms, wood, feed, and care of the horses and cows of said plaintiffs, as provided in the written contract hereinafter mentioned, and that, in case of the death of either of said plaintiffs, the survivor of them should receive but one half of said sum of $150, and said articles to be so furnished as aforesaid; and it was further agreed that, in case of a disagreement between said parties or dissatisfaction on the part of said plaintiffs with the treatment by said defendant *Peter*, it should be optional

with said plaintiffs to remain with said defendant *Peter*, and receive said support and annuity, or said annuity and the several articles of support hereinbefore mentioned, or to leave his care and support as aforesaid; and in case they should leave his care, then said defendant *Peter* was to pay them the sum of $2,500, and which said sum they were to receive in full satisfaction and payment of their right to support and annuity under said agreement; which said agreement was to be put in writing, and in all of the provisions, except the payment of said notes, was to be secured by a mortgage upon said real estate, to be given by the defendant *Peter* to the plaintiffs."

Judgment for plaintiffs was thereupon ordered and entered, reforming the written agreement and mortgage so that the same shall express the contract of the parties as the court thus found the same to be. The defendants appeal from the judgment.

*P. O'Meara*, for the appellants, contended, *inter alia*, that the evidence of mistake fell far short of that clearness and certainty required in order to justify the court in reforming the instruments in question. *Lake v. Meacham*, 13 Wis. 362; *Wells v. Ogden*, 30 id. 637; *Lavassar v. Washburne*, 50 id. 200; *Newton v. Holley*, 6 id. 592; *Meiswinkel v. St. Paul F. & M. Ins. Co.* 75 id. 147.

For the respondents there was a brief by *Barney & Kuechenmeister*, and oral argument by *S. S. Barney*.

LYON, J. The agreement and mortgage which the plaintiffs seek in this action to have reformed, so that the same shall express the understanding and contract of the parties thereto, are found by the court to be defective in four particulars. These are: (1) The mortgage does not cover and secure the performance of all the stipulations in the agreement to be performed by the defendant *Peter, Jr.;* (2) the agreement does not provide that *Peter, Jr.*, shall pay plaint-

iffs an annuity of $150 while they continue to reside in his house and receive their support from him; (3) it does not contain a stipulation that *Peter, Jr.*, shall give to each of his two unmarried sisters his note for $700; and (4) it does not provide that *Peter, Jr.*, shall pay the plaintiffs $2,500 in case they become dissatisfied with their treatment, and leave his house and support.

The defendants admit that the mortgage should be so reformed as to secure the performance of all the stipulations of the agreement. The agreements to pay the annuity of $150 while the plaintiffs lived in the house of *Peter, Jr.*, and received their support from him, and to give the $700 notes to his sisters, are abundantly proved, and not seriously controverted. They have ceased, however, to be of importance in the case, for the notes to the sisters were given, and the annuity was paid for two years, and payment thereof for the third year was tendered and refused. Hence the first three omissions from the instruments in question may be dismissed from further consideration.

This leaves only the question, were the instruments properly reformed in respect to the $2,500? The circuit court found that, at the time they were executed and delivered, *Peter, Jr.*, had no definite knowledge of the terms thereof, but trusted entirely to his father, the plaintiff *Peter, Sr.*, to have the same drawn as he might think best for the mutual protection and benefit of all the parties thereto. The testimony fully supports this finding. Hence the directions given by *Peter, Sr.*, to the notary are controlling, and whatever he directed to be inserted in the instruments should have been inserted therein. If anything so directed is not contained therein, they should be reformed accordingly.

Did *Peter, Sr.*, direct the notary to insert in the agreement a provision that, if plaintiffs were dissatisfied with their treatment, they might, at their option, leave his house and support, and thereupon become entitled to $2,500?

*Peter, Sr.,* testifies that he gave such direction to the notary, and his testimony is substantially supported by that of the notary. The latter testified on this subject as follows: "The $2,500 he could pay under certain circumstances; in case there should be a disagreement between both parties, that the party of the first part *Peter Kessel, Jr.,* should pay the party of the second part [the plaintiffs] the $2,500." While some of his testimony, standing alone, may seem to conflict somewhat with that here quoted, yet the testimony of the notary, as a whole, is fairly reconcilable, and is in accord with the above quotation therefrom. There is little or no testimony to the contrary. Even *Peter, Jr.,* does not deny that such direction was given by his father to the notary. Besides, the agreement mentions a note and mortgage for $2,500. It is probable that *Peter, Jr.,* has no knowledge on the subject. One Grasse, who was present when the instruments were executed, and who attested them, testified that the notary read them to *Peter, Sr.,* in German, that nothing was read about $2,500, and *Peter, Sr.,* said they were all right. But it must be remembered that the latter was very deaf, and he testified that he did not understand the reading or explanation of the instruments when rendered in German. The testimony of Grasse does not seriously controvert that of *Peter, Sr.,* and the notary. The witnesses were Germans. Some of them testified through an interpreter, and their testimony, as it appears in the record, is somewhat confused. In such a case the opportunity of seeing the witnesses and hearing their testimony is invaluable; indeed, almost essential to a correct understanding of their testimony. The circuit judge had this advantage, and we should hesitate to disturb his findings on mere questions of fact, even though we might have some doubt of their accuracy. But we have here no such doubt. The testimony as it appears in the record satisfies us that the facts were found correctly, and

that the instruments should be reformed to express what they were intended to express. Furthermore it is most equitable that the correction should be made. *Peter, Sr.,* testified that it was his intention in the transaction to give his son $5,000. The reformed instruments accomplished this intention. This is a very liberal compensation to *Peter, Jr.,* for twelve years' of service on the farm, over and above his maintenance.' For the reasons above stated we cannot disturb the judgment on the merits.

A single question of law was raised in the argument. The notary testified on his cross-examination, in substance, that *Peter, Sr.,* and another man came to see him in the summer of 1889, about the papers, and that he said to them they were written as *Peter, Sr.,* intended, and the latter became angry. The person with *Peter, Sr.,* at the time was Mr. Miller, who was acting as attorney for *Peter, Sr.* He was called as a witness by defendants, and interrogated as to what the notary said on that occasion. The court rejected his testimony, and gave as a reason therefor that Miller was acting as attorney for *Peter, Sr.* The proposed testimony was not competent on the merits, and was only admissible (if at all) for the purpose of impeaching the testimony of the notary. But there was nothing to impeach. The testimony of the notary was favorable to the defendants; it was just what they desired, and as they claimed the fact to be. So, whether the court gave a correct reason for rejecting the testimony or not, it was properly rejected.

*By the Court.*— The judgment of the circuit court is affirmed.