### ROBISON et al. v. THOMPSON et al.

No. 12718—Opinion Filed Oct. 7, 1924.

Rehearing Denied April 14, 1925.

(Syllabus.)

**Appeal and Error—Questions of Fact—Findings—Conclusiveness.**

Where, in a case properly triable to a jury, a jury is waived, and the case is tried to the court, the findings of the court in favor of one of the parties will, upon review here, be given the same weight as the verdict of the jury, and the findings of fact will not be disturbed where there is competent evidence reasonably tending to support such findings.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Lewis Robison and another against J. W. Thompson and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Stuart, Sharp & Cruce and W. L. Ransom, for plaintiffs in error.

Hughes & Foster, Thrift & Davenport, Aby & Tucker, and Humphrey & Campbell, for defendants in error.

JOHNSON, J. This is an appeal from district court of Creek county; Hon. Lucien B. Wright, Judge.

The record discloses that on the 12th day of November, 1920, Lewis Robison and W. L. Ransom commenced an action in the district court of Creek county, as plaintiffs, against defendants, J. W. Thompson, Ora Thompson, S. L. Canterbury, H. G. Hendricks, Nell M. Anderson, Geo. A. Smith, C. L. Davenport, J. E. Thrift, and Iron Mountain Oil Company, a corporation, by petition with exhibits thereto attached, in which the plaintiffs set out by separate paragraphs four causes of action.

In the first cause of action the plaintiffs sought to recover the title and possession

to the 40 acres described in their petition, with rents and profits alleged to be of the value of $400 a year. In the second cause of action they sought to have their title to the land quieted. In the third cause of action they ask an accounting as to the amount of oil and gas taken from the land and for the highest market value up to and including the date of the final judgment in the action. And in the fourth cause of action they sought to have a receiver appointed to take charge of such property and account to the court for the amount of oil and gas extracted from said land.

Their specific prayer for relief under their said petition was as follows:

"Wherefore, plaintiffs pray as relief under their first cause of action, that they be adjudged to be the owners of the northwest quarter (N. W. ¼) of the northeast quarter (N. E. ¼) of section twenty-eight (28) township sixteen (16) north, range ten (10) I. B. M., and be given immediate possession thereof.

"And as relief under their second cause of action, that defendants be required to come into this court, and fully set up their claims in and to said lands, and that said claims be adjudged null and void, be held for naught and defendants be enjoined from claiming any interest in and to said lands, and plaintiffs' title to said lands be quieted.

"And as relief under their third cause of action, that defendants be ordered to account to plaintiffs for the entire amount of oil and gas by them extracted from said lands at the highest market price until date of final judgment in this cause.

"And as relief under their fourth cause of action, that a receiver be appointed immediately to take charge of and manage said property and fully account into this court for the value of the oil and gas by him removed from said property.

"And as relief under each of said causes of action, your plaintiffs pray such other and further relief as they may be entitled to, premises considered, together with the costs of this action."

A jury was waived by the parties, and at the conclusion of the evidence and the argument of counsel the trial court announced his findings and conclusions as follows:

"The Court: I don't think, gentlemen, it is necessary to review the evidence in this case in order to reach a decision; but it appears from the evidence that Robison and this woman began living in this house there along about 1898, and they went around to her place in Okmulgee county some time in 1905. They improved that place down there and never returned to Creek county to live. In December, 1908,

this deed to Bernard B. Jones was executed by Robison. Lucy died down there in 1913. Apparently there were several children born to Lucy during these years. I noted in the direct examination of Nancy Bigpond she testified that Lucy lived with Piggie Foster for six or seven years after allotment and clear up until 1904. The plaintiffs' witn. John Baker, testified that Lucy and Lewis moved to Beggs before statehood and never went back to Tabor. Now, as I understand the law, gentlemen, to constitute a custom marriage among the Indians, as well as to constitute a common-law marriage among the whites, there must not only be a bona fide intention to live and cohabit together as husband and wife, but must be accompanied by a holding out to the world as such. Witnesses here have testified as to the general reputation in that neighborhood as to whether or not Lucy and Lewis were man and wife. A great many witnesses have testified against that reputation upon the part of the defendants; but it seems to me that a declaration against interest made years ago by the plaintiff in this case and the affidavit made by his former wife in this case as to the birth of this child, speak louder than words, louder than any oral testimony they have introduced at this time. The execution of this deed reciting that Lewis Robison was a single man, the execution of the mortgage with the same recital, speak louder than words. The plaintiff in this case had not only failed to establish his claim by a preponderance of the evidence; but it seems to me that claim has been refuted both as to the marriage and as to intention to return, by evidence so cogent, clear, convincing and conclusive that there can be no possible question about it. Having that in mind, judgment will be for defendants and against the plaintiff canceling the deed and the contract and quieting title in the defendants."

A timely motion for a new trial was filed, heard, and overruled by the court. Thereupon the court rendered judgment in accordance with his findings, the essential part of which is as follows:

"Wherefore, it is by the court considered, ordered, adjudged, and decreed that the plaintiffs take nothing by their petition herein. That the plaintiffs, nor either of them, have any right, title, interest, claim, estate, or demand in and to the property described in plaintiffs' petition herein or any part thereof, described as follows, to wit:

"The northwest quarter (N. W. ¼) of the northeast quarter (N.E.¼) of section twenty-eight (28) township sixteen (16) north, range ten (10) east, I. B. M., situated in the county of Creek, state of Oklahoma.

"It is further ordered, adjudged and decreed that the defendants are the owners of all the right, title, interest, and estate in

and to the lands above described, free, clear. and discharged of all claims or demands of the said plaintiffs, or either of them."

After which the court made orders adjusting the rights of the several defendants as to the property involved, canceling the contract between the plaintiffs, Robison and Ransom, and adjudging the cost against the plaintiffs. To reverse which judgment this proceeding in error was commenced.

As we have seen this is an action in ejectment brought by the plaintiffs in error against the defendants in error to recover possession of 40 acres of land in Creek county, alleged to be in the possession of the defendants, and wrongfully withheld from the plaintiffs. The plaintiff in error Lewis Robison was the allottee of the lands. The plaintiff in error W. L. Ransom claims under Lewis Robison. Plaintiffs (all parties will be referred to as they appeared in the court below) base their right to recover upon the allegations, briefly stated, that in 1908 Lewis Robison was the owner of the lands in controversy. That in 1908 he executed and delivered a deed to B. B. Jones, which deed was not joined in by his wife. That about the year 1898 he was married to one Lucy, sometimes referred to in the record as "Lucy Foster," and sometimes referred to as "Lucy," and also referred to as "Lucy Robison." That he resided upon this land as his homestead until about the year 1906, when, as he contends, they left it temporarily and moved to near Beggs and resided upon Lucy's allotment, where they continued to reside together until 1913, when Lucy died.

It is alleged in the petition that although the plaintiff and Lucy moved away from the land in 1906, they did so temporarily and with the intention of returning thereto. The answer of the defendants denied the marriage and denied any intention on the part of the plaintiff Lewis Robison and Lucy of returning to the lands.

If in truth and in fact the lands in controversy were the homestead of Lewis Robison in 1908, at the time he made the deed to B. B. Jones, and he was married at that time, and the deed was not joined in by his wife, then the deed was absolutely void and no title, either legal or equitable, ever passed to B. B. Jones.

So, it will be seen that the whole question in this case is whether there was any evidence reasonably tending to support the findings of the court.

Upon these questions the evidence was conflicting. The trial court's findings were in favor of defendants upon all issues of fact. There can be no reasonable argument that the evidence offered by defendants, if believed (and it was believed), is insufficient to support the judgment.

As before stated, the determinative question in this case is,, "Was Lewis Robison and Lucy husband and wife at the time Lewis deeded the land to Jones in December, 1908?" as that question determines the rights of the parties to this action. The trial court upon conflicting evidence decided that question adversely to the plaintiffs' contention.

Section 20, art. 7, of the Constitution of Oklahoma provides:

"In all issues of fact joined in any court all parties may waive the right to have the same determined by jury; in which case the finding of the judge upon the facts shall have the force and effect of a verdict by jury."

This court in the case of Hilsmeyer v. Blake, 34 Okla. 477, 125 Pac. 1129, in construing this provision of the Constitution, stated in the body of the opinion as follows:

"The requirement applies here with particular force. A number of the witnesses in the instant case were Creek Indians, and it appears that a part, at least, of the testimony was introduced through the medium of an interpreter. The trial court has a peculiar advantage in cases of this character in weighing and considering the testimony. Indeed the opportunity of seeing the witnesses and hearing their testimony in such cases is not only invaluable, but almost essential, to a correct understanding of the testimony. Kessel et ux. v. Kessel, 79 Wis. 289, 48 N. W. 382; Kennedy v. Pawnee Trust Co. et al., 30 Okla. 140, 126 Pac. 548. As there was evidence to support the findings of the court, the judgment of the court will not be disturbed."

And stated in paragraph 5 of the syllabus to that case as follows:

"Where a case is tried by the court, without the intervention of a jury, upon controverted questions of fact, and there is evidence reasonably tending to support its findings, such findings will not be disturbed on the weight of the evidence."

And again, this court in the case of Schock et al. v. Fish, 45 Okla. 12, 144 Pac. 584, in reviewing that Constitutional provision said:

"It is clear to our minds that this section of the Constitution refers to such cases as the parties would have a right to have determined by a jury, and in which cases the finding of the judge of the trial court has

the same force and effect as a verdict of a jury; and in all such cases, if there is any evidence tending to sustain the finding of the trial court, the Supreme Court, as has been often held, will not weigh the evidence and ascertain where the weight lies, but will sustain the finding of the trial court. But in purely equity cases this is not true. * * *"

And again, in Schaff v. McGuyre, 87 Okla. 41, 208 Pac. 263, this court, in an opinion by Mr. Justice Miller, said:

"This is a law action for the recovery of money, wherein an issue of fact is joined, and would be a proper case to submit to a jury. The parties waived a jury, and submitted the case to the court. On an appeal to this court, under section 20, article 7, of the Constitution of Oklahoma, the same rule obtains as though the case had been tried by a jury, and this court will not weigh the evidence. See McDonald v. Strawn, 78 Okla. 271, 190 Pac. 558; Farmers' & Merchants' National Bank v. School District, 35 Okla. 506, 130 Pac. 549; J. I. Case Threshing Machine Co. v. Lyons & Co., 40 Okla. 356, 138 Pac. 167; D. J. Faour et al. v. Moran et al., 40 Okla. 597, 139 Pac. 833; Franklin v. Wright, 42 Okla. 17, 140 Pac. 403; Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443; Schafer v. Lee, 64 Okla. 106, 166 Pac. 94; Hartley et al. v. Riley, 85 Okla. 101, 204 Pac. 920; Hamilton Township v. Underwood, 81 Okla. 256, 198 Pac. 300; Armstrong v. Phillips, 82 Okla. 82, 198 Pac. 499."

As we have seen, the determining issue in this case was one of fact, upon which issue a large number of witnesses testified, whose testimony was more or less in conflict. This issue was to be determined by the trial court. And there was ample competent evidence which reasonably tends to support the findings of the court, and in this situation, under the authorities cited and the repeated holdings of this court in other cases, which are easily accessible, this court is without authority to disturb the judgment of the trial court.

Therefore, the same is hereby affirmed.

McNEILL, C. J., and MASON, LYDICK, and WARREN, JJ., concur.