## JOHNSON et al. v. AMERICAN TRUST CO. et al.

No. 16648. Opinion Filed April 5, 1927.

Rehearing Denied June 21, 1927.

(Syllabus.)

**Appeal and Error—Questions of Fact—Conclusiveness of Findings in Law Action.**

Where questions of fact are submitted to the trial court in law actions, and there is any evidence reasonably tending to support its findings and judgment thereon, the same will not be disturbed on appeal.

Error from District Court, Pontotoc County; Arden L. Bullock, Special Judge.

Action by Julia Johnson et al. against the American Trust Company et al. Judgment for defendants, and plaintiffs appeal. Affirmed.

E. N. Jones, for plaintiffs in error.

Busby & Harrell, for defendants in error.

PHELPS, J. Mose Pettigrew was a full-blood Chickasaw Indian and his allotment was located in what is now Pontotoc county, where he died in 1905. He was married to Louvinia Pettigrew, also a full-blood Chickasaw, and to this union one child, Bynum Pettigrew, was born. Mose and Louvinia Pettigrew separated, and afterwards Mose Pettigrew and a woman who appears in this record under the name of Julia Johnson, one of the plaintiffs in error here, who was also a full-blood Chickasaw, lived together and to them two children, Foster Pettigrew and Hinabe Pettigrew, were born

One of the children, Foster, died, unmarried, intestate and without issue.

Suit was filed in the district court of Pontotoc county on April 5, 1919, by Julia Johnson et al., the purpose of which action was to establish her claim that she was the lawful wife of Mose Pettigrew at the time of his death—and that she and her two children were entitled to share with Bynum Pettigrew in his allotment. Issues were joined upon the question as to whether she was the lawful wife of Mose Pettigrew at the time of his death. Both oral and documentary evidence was introduced, and at the conclusion of the trial the court found the issues in favor of and rendered judgment for defendants, to reverse which this appeal is prosecuted.

It appears from the testimony of Julia Johnson herself that she first lived with a man named Tommy Johnson, by whom she gave birth to two children. She next lived with Jesse Wolfe, by whom she gave birth to two children. To him she was united by a ceremonial marriage performed by a minister, but they were never divorced, and this husband was still living when she "took up'" with Mose Pettigrew, and, after living with Mose and giving birth to two children, she was then married to Wesley Graham by a ceremony performed by a minister. They, however, were later divorced in the district court of Pontotoc county, and at the time of the trial of this cause she was living with Holmes Johnson, but not married to him, unless it can be said that a common-law marriage existed. It also appears that at the time Mose Pettigrew and Julia Johnson lived together Mose had not been divorced from Louvinia Pettigrew by any court proceeding, and it is contended by the defendants in error that, since Mose Pettigrew had a living wife from whom he had not been divorced, and neither had Julia been divorced from Jesse Wolfe at the time the two are said to have lived together, their relation could not be considered matrimonial, but merely meretricious.

Plaintiffs in error, in their effort to establish the matrimonial relation between Mose and Julia, rely exclusively upon the Indian customs said to prevail during that time, and introduce evidence of witnesses who testified that it was the custom among the Chickasaws to merely "take up" together, and this, according to the tribal custom, was regarded as sufficient to establish the matrimonial relation, also that when they decided to separate, all that was necessary was for them to cease living together and

"take up" with other parties, and this, according to the tribal custom, was sufficient to constitute a divorce,

These customs, however. were denied by defendants in error, who introduced in evidence copies of the law governing the Choctaws and Chickasaws as far back as 1876 showing that they had written laws requiring ceremonial marriages, tribal courts in which divorces were granted, and laws prescribing punishment for those living in an adulterous relation.

A number of witnesses testified that Mose and Julia lived together, much of the time at the home of Luffy Brown, Julia's father, and were recognized in the neighborhood as husband and wife. However, the strongest evidence refuting the claim that they were husband and wife is the affidavit of Julia herself when she filed with the Department of the Interior birth affidavits of her two children born while she and Mose are sa'd to have lived together, which affidavits were introduced in evidence at the trial. These affidavits each sworn to before a notary public, show that she was then going by the name of Julia Brown, her maiden name, and she states that Mose Pettigrew was the father of these two children, Foster Pettigrew and Hinabe Pettigrew, and that:

"I am not the lawful wife of Mose Pettigrew, * * * but said child is i legitimate and Mose Pettigrew is the father of the child."

The question as to whether the p'aintiffs or defendants. in the trial court. should prevail depended entirely upon whether Mose and Ju'ia were husband and wife, and therefore. whether their children were illegitimate children or the lawfu' issue of Mose and Julia as husband and wife. This question of fact was submitted to the trial court, and upon the evidence introduced the trial court, in rendering judgment, said:

"The court is of the opinion that the weight of evidence in these cases shows that there was never a legal marr'age between Mose Pettigrew and the plaintiff, Julia Johnson—Julia Brown—and that the children born to them were illegitimate children."

This court has so often held that where questions of fact are submitted to a jury, or to the court in the absence of a jury, the finding and judgment on such question of fact is binding upon this court and will not be disturbed upon appeal if there is any evidence reasonably tending to support it, that it is unnecessary to cite authorities or comment on that proposition. Robison

v. Thompson, 108 Okla. 160. 236 Pac. 395 (and cases there cited).

An examination of the record shows that the conclusion and judgment of the court are abundantly justified and sustained by the evidence, and, following this well-established rule, the judgment of the trial court is in all things affirmed.

BRANSON, C. J., MASON, V. C. J., and LESTER, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 4 C. J. p. 879, §2853; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73.