**TANCRED et al. v. HOLUBY et al.**

No. 16929—Opinion Filed Jan. 4, 1927.

Rehearing Denied March 8, 1927.

1. **Appeal and Error—Sufficiency of Evidence in Law Action—Suit by Heirs to Determine and Recover Interests in Land.**

An action brought for the purpose of determining the interest of plaintiffs in specific real estate, as heirs of the allottee, for possession of their respective interests therein, and to quiet title against adverse claimants, is one in which the parties are entitled to a trial by jury under section 532, Comp. Stat. 1921. In such case the judgment of the trial court will not be disturbed, if there is evidence reasonably supporting the same.

2. **Same—Conclusiveness of Findings by Court.**

Where a case is tried by the court without the intervention of a jury upon controverted questions of fact, and there is evidence reasonably tending to support its findings, such findings will not be disturbed on the weight of the evidence.

3. **Evidence—Burden of Proof of Affirmative Defense.**

Where a defendant sets up an affirmative defense and the plaintiff denies the existence of such fact, the burden of proof is upon the defendant to prove the allegations of his answer.

4. **Appeal and Error —Discretion of Court —Admitting in Rebuttal Evidence Properly Belonging to Case in Chief.**

Either party is entitled to introduce evidence to rebut that of his adversary, and where a party offers relevant testimony in rebuttal, even though it might properly have been offered in support of his case in chief, it is not error to admit it, unless an abuse of judicial discretion is shown.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by Lena Holuby, nee Gambler, and Billy Gambler, a minor, by his guardian, against M. T. Tancred and the Travelers Insurance Company. Judgment for plaintiffs, and defendants bring error. Affirmed.

Turner & Turner, H. B. Parris, and Horton & Gill, for plaintiffs in error.

Whitaker & Whitaker, for defendants in error.

124-4

Opinion by PINKHAM, C. The defendants in error, Lena Holuby, nee Gambler, and Billy Gambler, a minor, by his guardian, instituted this action against M. T. Tancred and the Travelers Insurance Company, plaintiffs in error, defendants in the trial court. The parties will be referred to as they appeared in the trial court.

The plaintiffs in the original petition alleged in substance that one John Gambler was a full-blood Creek Indian; that he died seized of his surplus allotment of lands on or about the 8th day of February, 1915, leaving surviving as his sole and only heirs at law his wife, Lena Holuby, nee Gambler, and his son, Billy Gambler; that on the 29th day of December, 1915, Lena Holuby conveyed an undivided one-third interest in and to said lands to one Tooka Raiford; that thereafter, and on the 26th day of January, 1916, the said Tooka Raiford conveyed said undivided one-third interest in said land to the defendant M. T. Tancred; that on the 27th day of April, 1916, the plaintiff Billy Gambler, by his guardian, William Givens, conveyed to the defendant M. T. Tancred an undivided one-third interest in said lands, who thereafter executed his certain mortgage to the defendant Travelers Insurance Company.

Plaintiffs further alleged that at the time of said conveyances they were the owners of an undivided one-half interest each in and to said lands; that by such conveyances only an undivided one-third interest each was conveyed and that by reason thereof they are the owners of an undivided one-sixth interest each in and to said lands, and ask that they be adjudged to be the owners of such interest; that their interest therein be partitioned and for further equitable relief.

Thereafter the defendant M. T. Tancred filed his separate answer wherein he alleged that he was the owner of the entire fee simple title in and to said lands; further alleging that sometime in March, 1902, the allottee, John Gambler, and one Hepsey McGilbray, who was also a full-blood member of the Creek Tribe of Indians, in keeping with the customs and laws of the Creek Tribe of Indians, entered into an agreement to become man and wife; that in pursuance of such agreement and tribal custom they married and cohabited together as man and wife; this cohabitation beginning in March, 1902, or thereabouts, at Mellette, Okla., near the location of the lands involved herein, and continuing without interrup-

tion some 13 or 14 months, and that one Martin Gambler was the issue of such marriage; that the common law and tribal marriage existing between the said John Gambler and the said Hepsey McGilbray was recognized by the people in the neighborhood and especially among the Creeks as a union of man and wife and that they were usually referred to as such, and bore a general reputation in the community in which they resided as being man and wife, and that he, Martin Gambler, became, on the death of the said John Gambler, entitled to, and the sole owner of. a full one-third interest; that the said Martin Gambler, on the 23rd day of April, 1916, by and through his legal guardian, William Givens, conveyed to the defendant M. T. Tancred an undivided one-third interest in and to the land involved herein, and further alleges that he was owner of all the right, title, and interest in and to said lands subject to a certain mortgage executed by him to the defendant, Travelers Insurance Company.

Thereafter plaintiffs filed their amended and substituted petition alleging the same substantial facts as in their original petition and to which substituted petition the answer of the defendant Tancred was refiled, and on the 22nd day of January, 1925, the defendant Travelers Insurance Company filed its separate answer substantially the same as the answer of the defendant Tancred.

To the several answers the plaintiffs filed their reply by way of general denial.

The cause was tried to the court and on the 16th day of April, 1925, judgment was rendered for the plaintiffs in accordance with the prayer of their petitions. The defendants' motion for a new trial was overruled, exceptions reserved, and from this order and judgment of the court the defendants have duly appealed by petition in error and case-made attached.

All of the defendants' assignments of error are presented under four propositions in their brief: First, that the court erred in overruling the motion of plaintiffs in error for a new trial; second, that the judgment and decision of the court is not supported by the evidence and the law. and is against the great weight of the evidence; third, that the court erred in overruling the demurrer of plaintiffs in error to the evidence offered in chief on behalf of the defendants in error; and fourth, that the court erred in permitting the defendants in error to introduce evidence in support of their case

in chief after the plaintiffs in error had rested their case.

There is no dispute as to the fact that Lena Holuby, nee Gambler, was the lawful wife of the allottee, John Gambler, at the time of his death, and that Billy Gambler was their son; and there is no dispute as to the fact that the deed from the plaintiff Lena Holuby, nee Gambler, to the defendant Tancred, conveyed only an undivided one-third interest; nor is there any dispute that the deed executed by the guardian of Billy Gambler to the defendant Tancred conveyed only an undivided one-third interest; the description in both deeds being clear and unambiguous.

The defendant M. T. Tancred claims title to two-thirds of said land by virtue of said conveyances. He also claims, however, that the allottee John Gambler left another son, Martin Gambler, who, as such, received by inheritance the remaining one-third interest, and that this interest was acquired by the defendant Tancred.

It was claimed by the defendants that the said Martin Gambler was a legitimate offspring of a common-law marriage between the deceased John Gambler, and one Hepsey McGilbray, the mother of Martin.

Under this state of facts the only important question involved in this case is whether or not Martin Gambler was a legitimate son of the deceased, John Gambler.

The defendant Travelers Insurance Company is interested in the litigation by reason of a mortgage executed by the defendant Tancred on the lands herein involved and other lands.

It is admitted by both defendants that the property in question was the allotment of John Gambler, and that he died seized thereof.

The trial court found the issues in favor of the plaintiffs and decreed that the plaintiffs were the owners of an undivided one-sixth interest each in said land, and that the defendant M. T. Tancred was the owner of the other undivided two-thirds interest, and that the defendant Travelers Insurance Company was the holder of a mortgage on that portion of the land owned by Tancred, and ordered partition of said lands.

It is the theory of the defendants that the evidence discloses that a common law or tribal marriage existed between John Gambler and Hepsey McGilbray; that they be-

came man and wife by virtue of an agreement, and that as a result of such agreement there was born a child who was named Martin Gambler, who was recognized by John Gambler during his lifetime as his child, and that this recognition made him an heir and that he became, on the death of John Gambler, the owner of a whole one-third interest in the property involved in this case.

There is a sharp conflict in the evidence with respect to the relations existing between John Gambler and Hepsey McGilbray, the testimony on the part of the defendants being to the effect that these parties were regarded as man and wife in the community where they resided; that they lived together in the same house for a period of about a year. The testimony on the part of the plaintiffs was to the effect that they were not regarded as man and wife by their neighbors; that they never did live together; that the child Martin was born at Hepsey McGilbray's mother's house; and that she lived with her mother all the time.

The record discloses a certified copy of the complete enrollment record of Martin Gambler certified to by the acting Superintendent for the Five Civilized Tribes This record contains certain affidavits made by Hepsey McGilbray and by her mother, Lizzie McGilbray, both being dead at the time of the trial of this case.

These affdavits are to the effect that a male child was born to Hepsey McGilbray on the 16th day of October, 1903: that Hepsey McGilbray was about 20 years of age, a citizen by blood of the Creek Nation, and not the lawful wife of John Gambler and that said child was named Martin Gambler and is now living.

The record also contains the testimony of Hepsey McGilbray given at the time of the enrollment of Martin Gambler in which she testified that John Gambler was the father of Martin Gambler, but that she was not married to John Gambler.

There is evidence in the record from which it may be fairly inferred that there could not have been a cohabitation at the places where the witnesses for the defendants testified that John Gambler and Hepsey McGilbray lived for a year because of the admitted fact that these houses were occupied by other persons, who testified in the case, and whose testimony lends no support to the theory of the defendants that

John Gambler and Hepsey McGilbray cohabited together at such places.

The witness at whose home the defendants sought to prove a cohabitation between the deceased allottee and Hepsey McGilbray testified that "They would stay all night there sometimes when around there, but she could not say they were recognized as man and wife by the relatives and by the folks in the neighborhood."

The recent case of McFarland et al. v. Harned et al., 115 Okla. 291, 243 Pac. 141, is cited by counsel for defendants and particularly relied upon as an authority for the proposition that the evidence and the law applicable thereto require the reversal of the judgment in the instant case. The cited case announces the well settled rule that in controversies involving heirship, and the legitimacy of children, the presumption of law is in favor of legitimacy. This presumption, however, is a rebuttable one, and in the cited case the court concluded that in view of the admitted facts that the parentage of the child involved therein having been established by the enrollment record, the presumption obtained that the child's parents were lawfully married, when considered in connection with the further fact that the defendants in error in that case offered no testimony in conflict with that offered by the plaintiffs in error, which was to the effect that the parties there in question cohabited part of the time in their own home; that they were received and admitted into the homes of their near relatives as husband and wife, and that they were generally recognized and considered by the members of the tribe, and particularly by their kinspeople as husband and wife.

In the instant case the trial court found that the presumption of legitimacy was met and overcome. The evidence shows there was a total lack of testimony that a home was ever established, or that the duties incident to married life were ever assumed.

This case being an action by heirs of an Indian allottee to determine their interests in the land involved, to recover the possession thereof, and to quiet title. if there is evidence reasonably tending to support the judgment of the trial court, such judgment will not be disturbed here.

In the case of Halsell v. Beartail, 107 Okla. 103, 227 Pac. 392, it is held that:

"An action brought for the purpose of determining the interest of plaintiffs in specific real estate, as heirs of the allottee, for possession of their respective interests

therein, is one in which the parties are entitled to a trial by jury under section 532, Comp. Stat. 1921. In such case the judgment of the trial court is supported by the evidence, if there is evidence reasonably supporting the same."

To the same effect see Baker v. Jack, et al., 112 Okla. 142, 241 Pac. 478; Lively v. Butler, 108 Okla. 225, 236 Pac. 18.

It is well settled in this jurisdiction that:

"Where, in a case properly triable to a jury a jury is waived, and the case is tried to the court, the findings of the court in favor of one of the parties will, upon review here, be given the same weight as the verdict of the jury, and the findings of fact will not be disturbed where there is competent evidence reasonably tending to support such findings." Robison v. Thompson, 108 Okla. 160, 236 Pac. 395.

The second proposition discussed by counsel for defendants in their brief relates to the error of the court in overruling the demurrer of the defendants to the evidence of the plaintiffs at the close of their evidence. It is argued that if this action is to be treated as an ejectment suit then it is necessary for the plaintiffs to have snown possession in the defendants, which they failed to do.

This contention is not sustained. The action brought by plaintiffs was in ejectment to recover possession of their portion of the real property involved herein, and with such action was joined an action to quiet their title thereto as provided by section 466, C. S. 1921.

Proof that the defendants were in possession was unnecessary by reason of the nature of the answers filed. Both defendants denied the title of the plaintiffs in their answers.

Section 468, C. S. 1921, governing the answers in ejectment actions, reads as follows:

"It shall be sufficient in such action, if the defendant in his answer, deny, generally the title alleged in the petition, or that he withholds the possession, as the case may be, but if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted. * * *"

The evidence of the plaintiffs in their case in chief shows that the allottee, John Gambler, died in 1915, leaving a wife, Lena Gambler, and only one child, Billy Gambler, and that an undivided one-third interest only in and to said land each had been conveyed. We conclude that the evidence on the part of the plaintiffs in chief was sufficient to make out every essential to the plaintiffs' case.

The defendants' fourth assignment of error is that the court erred in permitting the plaintiffs to introduce evidence in support of their case in chief after the defendants had rested their case. We are unable to agree with this contention. We think that the evidence objected to by the defendants was proper rebuttal and was introduced in its regular order and that the introduction of such evidence was a right to which the plaintiffs were entitled. The defense of the defendants was that a marriage existed, resulting in an additional heir.

"Where defendant sets up an affirmative defense, and the plaintiff denies the existence of such fact, the burden of proof is upon the defendant to prove said allegations of his answer." Equitable Surety Company v. Sapp, 77 Okla. 221, 187 Pac. 917.

While it is true the usual burden of proof was upon the plaintiffs, the burden of first adducing evidence as to the alleged marriage between the allottee, John Gambler, and Hepsey McGilbray was upon the defendants, and the plaintiffs were entitled thereupon to introduce rebuttal testimony.

Either party is entitled to introduce evidence to rebut that of his adversary, and where a party offers relevant testimony in rebuttal, even though it might properly have been offered in support of his case in chief, it is not error to admit it, unless an abuse of judicial discretion is shown.

The evidence introduced by the plaintiffs on rebuttal and particularly objected to by the defendants was to the effect that no marriage relation had ever existed between the deceased allottee and Hepsey McGilbray, and we cannot say that the admission of such evidence constituted an abuse of the court's discretion in controlling the order of proof.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 879, §2853; 35 C. J. p. 156, §27. (2) 4 C. J. p. 879, §2853; 2 R. C. L. p. 206; 1 R. C. L. Supp. p. 444; 4 R. C. L. Supp. p. 92; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 76. (3) 22 C. J. pp. 73, 74, §16. (4) 4 C. J. pp. 816, 817, §2787; 38 Cyc. pp. 1343, 1357.