## ANSON et al. v. ANSON et al.

No. 23154. Sept. 18, 1934.

Rehearing Denied Oct. 23, 1934.

I. H. Lookabaugh, for plaintiffs in error.

Corn & Corn and Tom L. Ruble, for defendants in error.

PER CURIAM. This was a civil action in district court of Dewey county, Okla., by the Pioneer Mortgage Company, a corporation, plaintiff, against Van Doren Anson, Susan L. Anson, his wife, Justin M. Anson, Fern Anson, his wife, W. T. Coyle and Mrs. W. T. Coyle, his wife, defendants. Plaintiff sought foreclosure of a real estate mortgage covering the south half of the northwest quarter and the north half of the southwest quarter of section 29, township 18 north, range 15 W. I. M., in Dewey county, Okla., executed by said Van Doren and Susan L. Anson, to secure payment of a note of $1,200, alleged to be in default. The defendants, other than the said mortgagors, were alleged to claim some interest in the premises. Neither of said defendants contested plaintiff's mortgage, or its right to foreclose. On November 6, 1930, Honorable T. P. Clay, district judge in and for said county, rendered judgment for plaintiff and against all of said defendants for $1,437.60, with interest thereon, and attorney fee, and foreclosure, and ordered any proceeds of sale in excess of said judgment paid into court. On June 16, 1931, said land was sold under execution to satisfy said decree unto one Wave Allen for $2,500. Van Doren and Susan L. Anson, and Wade Martin, a tenant, filed objections to confirmation of sale, upon the ground that there was an oral agreement between counsel for plaintiff and counsel for said objectors that the lands would not be sold 'until the litigation between cross-petitioners should be settled, even though same went to the state Supreme Court; that plaintiff's counsel violated said agreement, and prevented same

from appearing in the decree, by reason whereof said decree was void. This is the only issue presented which affects plaintiff.

Fern Anson admitted plaintiff's mortgage lien, and alleged that she had a second lien on the same land by virtue of a judgment of the district court of Dewey county, Okla., in cause No. 2409, wherein she secured a divorce from Justin M. Anson, who held legal title to said land. She prayed also for foreclosure of her lien, and that the proceeds of sale of said lands by plaintiff, and in excess of its lien, be paid to her. Van Doren and Susan L. Anson, by their answer and cross-petition, admit that Fern Anson has a judgment purporting to be, but is not in fact, a lien against said lands, for the reason that Justin M. Anson was not the owner, but held the naked title to said lands as trustee for them. They further allege that Justin was the former husband of Fern Anson, who was a kleptomaniac and given to taking things belonging to others, which resulted in domestic difficulty. That, in December, 1928, Fern requested these cross-petitioners to convey said lands to her husband, promising that she would "quit her kleptomaniac acts, and that she and her husband would live together happily and contentedly ever after." That, relying upon such promise, said cross-petitioners executed and delivered a warranty deed to said land to Justin, who paid no consideration therefor. That soon thereafter Fern repeated her acts of kleptomania, whereby said estate was forfeited. The issues developed between the cross-petitioners were reserved for a separate and subsequent trial, and were finally concluded on June 13, 1931, before District Judge E. L. Mitchell, who found said issues in favor of cross-pettioner, Fern Anson. The case comes to this court in two aspects, the first involving the correctness of the ruling of Judge Clay, in sustaining confirmation of foreclosure sale herein, and second, upon the finding of Judge Mitchell that Justin was owner of the land in controversy and sustaining Fern's judgment lien thereon. The challenge to each of these rulings is that same is not properly sustained in the evidence.

We shall deal first with the challenge of the order confirming sale. It is established by the record that the journal entry in favor of plaintiff and ordering foreclosure was rendered and filed November 6, 1930. at an assigned hearing of the cause, all attorneys being present. Van Doren and Susan L. Anson contend that the journal

entry should have contained, but does not contain, a provision that plaintiff would not sell the land under foreclosure until the issues between cross-petitioners were finally litigated, even to the state Supreme Court. Counsel for plaintiff contend that the agreement is accurately reflected in the journal entry; that he made no agreement to await litigation of these issues except in district court, and in fact that the district court had passed thereon at the time of sale.

It is quite impossible to reconcile the evidence of the respective attorneys. The trial court made no effort to do so, neither shall we. The court overruled the objections to confirmaton, and held the sale regular. Under the proof the court was fully warranted in this holding. In addition, we think there is abundant legal authority for sustaining the court's action. In Exchange Trust Co. v. Palmer, 163 Okla. 33, 20 P. (2d) 897, the court holds that: In objection to confirmation of mortgage foreclosure sale, only questions pertaining to proceedings in sale, and not matters relating to judgment or title to property, should be considered.

"Questions entering into or relating to the judgment are not matters for consideration in a hearing on confirmation of sale of real estate. It is only those questions relating to or pertaining to the proceedings in a sale that are proper for consideration." Kline v. Evans, 103 Okla. 44, 229 P. 427.

The same rule is supported in Severson v. Bemore, 137 Okla. 50, 278 P. 327; Millard et al. v. Nelson, 139 Okla. 56, 281 P. 238; Smith v. Curry, 155 Okla. 235, 9 P. (2d) 19; Brazell v. Brockins, 95 Okla. 38, 217 P. 847.

Passing now to the issue as to the ownership of the land. Van Doren and Susan L. Anson contend that they are beneficial owners of said land and that Justin holds legal title thereto in trust for them. Their pleading against Fern has been briefly noted above to the effect that they conveyed said land to their son, Justin, upon the promise that Fern would not repeat those acts which characterize kleptomania, and that she would try to make a good home for her husband.

Van Doren testified, in substance, that he is a farmer and cattleman, owning 960 acres of land, worth from $6 to $50 per acre; 200 acres good, the other pasture land; is father of Justin, the former husband of Fern; they married in 1924, and afterwards lived on land in controversy;

they had two children and practically no property. He permitted Justin to keep a number of his cattle and stock on the farm for temporary use, but original and increase remained the property of Van Doren Anson. Justin was permitted to feed the live stock, hogs, etc., and such of them as were not needed on the place were sold and proceeds applied on mortgage on the farm. Van Doren testified also in the said divorce case. The following excerpts are part of his testimony:

"Q. 'That stock that went to pay the mortgage, what did you do that for,—to help Justin own the place?' Answer, 'I did, yes, sir.' Was that question asked you and that answer given? A. I don't remember that question. Q. Well, was that true or untrue? A. Well, yes, I reckon it is, yes, if it would. Every cent went that way. * * * Q. Did you ever given him permission to mortgage any of this stock that you claim belonged to you? A. Yes. * * * Q. I will ask you if this question was asked and this answer was given, 'Did Justin actually earn the money to purchase this land?' Answer, 'He couldn't have done that,'—was that question asked and that answer given? A. I don't know whether it was or not? Q. You don't know whether it was or not? A. I don't know whether the question was asked or not. Q. (reading) 'Did he earn part of it?' Answer, 'He earned some of it, yes, sir,'—was that question asked and that answer given? A. If it was asked it was answered that way, yes. sir, because we worked with the rest of the boys. Q. (reading) 'What part do you think he made?' Answer, 'Well, I couldn't hardly tell you that. I wouldn't know how to estimate that,'—was that question asked and that answer given? A. I think it was. * * * Q. (reading) 'Did he get any interest in the cattle?' Answer, 'The interest he got was in this deed,'—was that question asked and that answer given? A. I don't remember about that. Q. Well, that is untrue, isn't it? A. I wouldn't say whether it is or not. I don't remember. Q. Well, if that was said, then it is untrue now, isn't it, according to your statement now? A. No, he was to have the deed, you understand, under conditions. * * * Q. Mr. Anson, you claim that this deed was given to your son in trust, to be held by him for you? A. I gave him that deed in trust, yes. Q. And he was to furnish,—and he was to turn this land back to you? A. If they didn't live up to the contract. Q. If she didn't quit stealing property, is that what you mean? A. Yes. * * * Q. I sked you why you had him agree to pay the mortgage? A. I didn't have him to agree to pay the mortgage,— I left the mortgage on the place. Q. Well, it is stated in the deed that he assumed and agreed to pay the mortgage. A. If he had anything to pay it with."

Van Doren stated that when Fern admitted she had taken another's property subsequent to the transfer he made a demand for return of the land because the estate had been forfeited.

In substance, the testimony of Fern was that she was former wife of Justin, from whom she obtained a divorce November 4, 1929, and that at that time they owned the farm in question and on which they had lived for four years. It was deeded to Justin about a year before the divorce. She has two minor children by Justin; she denied that she had ever at any time stolen any property from anyone and stated that the same charge was set up as a defense against her in the divorce case. She heard Van Doren talking with Justin about conveying to him the farm. He told Justin to work and save and pay off this mortgage, and when it was paid off he would deed it to him; does not know who owned the personal property on farm, except what they said about it; she never saw the deed to Justin until about the middle of January, 1929, when same was brought out to the farm by Mrs. Susan L. Anson, who said, "Here take this and put it up," and upon being asked what it was, she responded, "You will find out in a few days." And Justin took the deed and put it away.

Fern introducted her said divorce decree, adjudging her a divorce on account of extreme cruelty of her husband, and awarding the exclusive care, custody, and education of her two minor children, giving her $1,200. alimony and certain maintenance for the children, and declaring said allowances a lien upon said lands which were adjudged to belong to Justin; also the verified motion of Justin in the divorce proceeding to set aside the temporary order therein, in which it is set out that he is owner of said land, worth $4,000. subject only to plaintiff's mortgage; that he has in his possession three mules, one horse, two colts, 16 cows, heifers and calves, two sows and 19 pigs belonging to Van Doren, but loaned to movant. There was much other evidence, but the foregoing is a fair epitome of same.

In solving the issue of ownership of the land and the alleged trust therein, heed should be given to certain provisions of our C. O. S. 1921, sections 8457, 8459, 8461, 8462, and 8463, which are in words and figures as follows:

Section 8457:

"Limited to Those Specified. Uses and trusts, in relation to real property, are those only which are specified in this article."

Section 8459:

"What Use Equivalent to Legal Estate. Every person who, by virtue of any transfer or devise, is entitled to the actual possession of real property, and the receipts of the rents and profits thereof, is deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his beneficial interest."

Section 8461:

"Certain Trusts Not Affected. The preceding sections of this chapter do not extend to trusts arising or resulting by implication of law, nor prevent or affect the creation of such express trusts as are hereinafter authorized and defined."

Section 8462:

"Requisites of a Trust. No trust in relation to real property is valid unless created or declared:

"First. By a written instrument, subscribed by the grantor or his agent thereto authorized by writing;

"Second. By the instrument under which the trustee claims the estate affected; or,

"Third. By operation of law."

Section 8463:

"Trusts Presumed, When. When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

It is clear from the pleadings of Van Doren and Susan L. Anson that they rely upon an implied or resulting trust, since they allege their conveyance to Justin was without consideration; also, upon an express trust, as shown by their allegation that Justin and Fern orally promised upon certain conditions to reconvey.

While there is no substantal allegation of fraud in the cross-petition of Van Doren and Susan L. Anson, and much of their evidence has been objected to under the statute of frauds, nevertheless, since all this evidence is so interwoven with and bears directly or indirectly upon the issue as to whether or not there was any consideration paid by Justin, and as tending to show the presence or absence of good faith on his part, or that of his wife, we have chosen to consider all the evidence offered in disposing of these issues.

From a most careful study of this record, we are driven to the conclusion that the vital, if not the finally determinative question here, is, Did Justin take over title to the said land without consideration? Did he pay anything for this land? We have

not narrowed our inquiry here to a determination of whether or not Justin paid a consideration which would come barely within the rather broad definition of consideration, as defined in section 5019, O. O. S. 1921. It has been our thought and purpose to discover from this evidence whether or not Justin bought this land, or paid a substantial consideration for it. If he did so, that would not only prevent any resulting or implied trust, but would also go far to negative the existence of an express trust touching the land. For, in such case, what right would remain in one who had sold his land to set up a claim or trust in same, or dictate its future transfer? How far could such former owner proceed in a court of equity for forfeiture of the legal title without an offer to restore the consideration? From a study of the evidence, we think it reasonably clear that part of the proceeds of the farming operations and cattle raising of Justin went to reduce the mortgage debt owed by his father, and part of the purchase price of these lands came from the earnings of this son. The evidence of Van Doren is at best neither clear nor quite explicit on the subject; but it is rare for a litigant to understate his case.

It is admitted that Justin assumed an outstanding first mortgage which Van Doren and Susan L. Anson executed and owed on this land. By the assumption and transfer Justin became primarily liable for the debt. In fact, the record discloses that plaintiff took judgment against Justin for this debt, which was about half the value of the land. We therefore conclude that there was no implied or resulting trust.

This transfer was effected by a formal deed, executed and properly acknowledged by parties of full age, delivered and recorded, and conveying the highest estate in lands known to the law— a fee-simple absolute, with full warranties. It purported to disclose a consideration of $4,000, and contains a covenant that the land is free from incumbrances except a mortgage for $1,200, due Pioneer Mortgage Company, payment whereof the grantee assumes.

It is sought here to show that no consideration was paid, that no fee-simple title absolute passed, but that the transfer was to be avoided and forfeited if grantee's wife should not behave. Every legal presumption is in favor of the correctness of the deed and of the integrity of the transaction as written.

When it is sought to create by parol a trust in real property which has been conveyed by deed, in fee-simple absolute, or to engraft a condition limiting or forfeiting the estate, practically all the courts require the proof to be clear, strong, and unequivocal, or clear, cogent, and convincing. Babcock v. Collison, 73 Okla. 232, 175 P. 762. See, also, 65 C. J. 324.

Under all this proof, it was a question for the determination of the trial court. He has passed upon it, and, upon a review of the evidence, we hold his finding correct and properly supported.

The conclusions reached are sufficient to dispose of the case, but we might call attention to the fact that this alleged condition for the reconveyance could only be a condition subsequent. The intent to create such condition must appear expressly or by very clear implication (Firth v. Los Angeles Pacific, etc., Co., 28 Cal. App. 399, 152 P. 935); forfeitures under such conditions are not favored (Lowe v. Copeland [Cal. App.] 13 P. (2d) 522, at 525; Freeland et al. v. Dolen, 84 Okla. 286, 203 P. 182); forfeitures are not favored (R. T. Stuart & Co. v. Graham, 117 Okla. 117, 245 P. 608; 13 C. J. 566; Camp Mfg. Co. v. Parker, 91 Fed. 705, 34 C. C. A. 55).

Under this evidence of Van Doren Anson, his daughter-in-law was an unhappy sufferer from kleptomania. They refer to admissions of hers concerning acts characteristic of this disease. It is not testified that anyone ever took any steps to punish her or that she took anything of considerable value. This conduct of hers was inquired into in the divorce proceeding, and the fact that she recovered a divorce, alimony, and custody of her two children, and the finding that she has properly behaved herself, despite the evidence of her kinsman, who leveled this charge against her there, is significant. The authorities indicate that kelptomania is a disease, characterized by an uncontrollable impulse to appropriate articles, without respect to their value, belonging to others. It really seems that this unhappy condition of hers has been rather widely advertised by those only who owed her most their protection.

We find, therefore, that the findings and judgment of the trial court were in all things properly supported in law, and in the evidence, and the same should be, and the same are, affirmed in all respects.

The Supreme Court acknowledges the aid of Attorneys Crawford D. Bennett, Earl Foster, and E. E. Blake in the preparation of this opinion. These attorneys consti-

tuted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bennett, and approved by Mr. Foster and Mr. Blake, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.