GAINES BROS. CO. et al. v. GAINES.

No. 26104.   Feb. 4, 1936.

Withdrawn, Corrected, Refiled, and Rehearing Denied April 21, 1936.

Vern E. Thompson and Loyd E. Roberts, for plaintiffs in error.

M. W. Hinch and Frank Nesbitt, for defendant in error.

PER CURIAM. For convenience parties will be referred to as in the lower court. The plaintiff instituted this action for ejectment of the defendants from certain lands and quieting plaintiff's title therein. The plaintiff alleges that he was the owner of certain tracts of land, and attached as exhibits copies of warranty deeds to each and all of said tracts of land, and alleging that the defendants were in possession of the same, and that said possession was without right and unfounded, and that the claim of the defendants constitutes a cloud on plaintiff's title, and prays to have the same removed and title forever quieted in plaintiff.

The defendants filed an answer and cross-complaint. In addition to a general denial, it is admitted that the defendants were in possession of the property as alleged and described in plaintiff's petition. It is further claimed that the defendant, Gaines Brothers Company, a corporation, had quit-claimed all of its interests in and to the property to the individual defendants, including the plaintiff herein. The answer admits that the plaintiff is the holder of the record title to all of the property described in his petition, and further alleges that the defendant corporation had always had the uninterrupted and peaceful use and possession of all of said property; that the plaintiff had never had any beneficial title in said property, but acquired each and every tract thereof for the use and benefit of the defendant, Gaines Brothers Company, a corporation, its creditors and assigns; that the plaintiff was holding the same in trust for said corporation, and that by asserting ownership therein, he was attempting to convert said property to his own use and benefit in violation of his trust, and that said trust should be, by the court, ended and determined in this action. Defendants pray that plaintiff's petition be dismissed, and that Josie Gaines, Walter Gaines, Frank L. Gaines, W. H. Gaines, Earl E. Gaines, Mayme Gaines Powell, and Ralph E. Gaines be declared to be the beneficial owners of an undivided interest in said property as set out in their answer, and that plaintiff be required to execute to said defendants suitable conveyances to their undivided interest, and that he be decreed to have no further interest in the undivided interest claimed by the individual defendants.

To the answer and cross-complaint the plaintiff filed a reply in the nature of a general denial.

When the case was called for trial the court ruled that under the pleadings the burden of proof was on the defendants as legal title in the plaintiff was admitted. The defendants objected and excepted to this ruling. There is not very much conflict in the testimony.

It appears from the evidence adduced that two brothers, James Henry Gaines and Frank Gaines, first began their business relations as partners engaged in stock raising, farming, etc., and on the 20th day of June, 1907, the two brothers organized a corporation and all of their property was transferred to this corporation. Their interest in the corporation was practically equal with four shares assigned to Walter Gaines so as to have three incorporators, consisting of James Henry Gaines, Frank Gaines and Walter Gaines. Before the organization of the corporation the two brothers kept a joint bank account, against which they drew such checks as they desired for the operation of the partnership and for their own individual needs. After the corporation was organized and a charter issued, these two brothers proceeded in the same manner, using the funds of the corporation in such amounts as their individual needs required and no record was kept of any withdrawals by either brother. This relationship continued without friction until the death of James Henry Gaines in March, 1914. One of the sons of James Henry Gaines was elected a director soon after his father's

death and the business was carried on along the same lines as theretofore with the plaintiff and the heirs of his brother drawing checks against the bank account of the corporation to meet their individual needs, without much, if any, record being kept thereof. The corporation was operated as a family affair, and all was harmonious until about the year 1930, when friction developed as to the exact interest of the two brothers in said corporation. From the organization of this corporation in 1907 until about 1929, there had never been a formal meeting of its board of directors, except the one meeting at the death of James Henry Gaines, when his son, W. H. Gaines, was made one of the directors of the corporation to take his father's place. There were no formal dividends declared during this time. The plaintiff from time to time withdrew funds from the corporation for his individual needs and the widow and children of James Henry Gaines did likewise, which included payment of household expenses, the education of their children, building of homes, etc. No objection was registered by any of the parties to this action and manner of handling the business, for more than 15 years ·after the death of James Henry Gaines.

Beginning with 1910 up to the death of James Henry Gaines the plaintiff withdrew funds from the corporation and purchased ten tracts of land. After the death of his brother, the plaintiff, on the 6th day of November, 1914, and again on March 12, 1920, and on June 3, 1922, withdrew funds from the corporation with which he acquired three additional tracts of land, all of which is the subject of this action. The funds withdrawn by Frank Gaines with which to purchase the lands in question amounted in the aggregate to approximately $20,000. Prior to his death, the brother, James Henry Gaines, had withdrawn funds from the corporation in like manner as the plaintiff herein and acquired lands in his own name for which he paid with said funds, amounting in the aggregate to about $40,000. Upon the death of James Henry Gaines his estate was probated and all the lands he had acquired in his individual name were listed and returned as assets of his estate and were assigned to his heirs, who are the individual defendants in this action. Later on the children of James Henry Gaines quitclaimed all of their interest in such lands to their mother, Josie Gaines, one of the defendants herein, who is the present owner thereof.

All of the land acquired by the plaintiff and the individual defendants was listed and assessed for taxes in their respective individual names and the taxes paid from the corporation bank account the same as all other expenses of the two families were paid. The proceeds derived from the lands of all the parties were placed in the corporation bank account and used as a family account by all the parties regardless of what amount or for what purpose so long as the amount used was reasonable. At no time have the rights of creditors been involved in this family controversy. In 1929-1930 the two sons of the deceased brother began to assert their authority as a majority on the board of directors of the corporation and friction immediately developed. Soon after this a dividend of $260,000 was declared and divided between the stockholders of the corporation.

The plaintiff contends that the funds withdrawn for the purchase of these lands by both him and his brother were in the nature of dividends and so regarded by both; that sometime after the corporation was organized he and his brother, in an informal way, discussed the sale of Indian land soon to be made, and both concluded that it would be well for each of them to purchase some of this land in their individual names and for their individual use with the funds of the corporation, and that with this understanding all of the lands in question were purchased. All the witnesses who testified were members of the families of these respective brothers. On cross-examination all witnesses for the defendants, wherever it was necessary to elicit all the facts, were made witnesses for the plaintiff, and it appears from a reading of this record that both plaintiff and defendants presented all the testimony they desired to present in the case. At the conclusion of the testimony on the part of the defendants, plaintiff interposed a demurrer, and the trial judge, after having briefs submitted to him as to the law and the matter being argued at length by counsel, sustained the demurrer and rendered judgment for the plaintiff. From the judgment thus rendered the defendants have prosecuted this appeal.

In the outset we must compliment counsel on both sides for the able and comprehensive briefs presented in this case.

The first contention advanced by the defendants is that the trial court erroneously ruled that the burden of proof or the burden of proceeding under the pleadings was upon the defendants; that in an ejectment action the burden never shifts from the plaintiff to the defendants, and that when the court ruled that the burden was on the defendants it committed error and also com-

mitted error in overruling the motion of the defendants for judgment on the pleadings. It becomes necessary to determine just what issues were made by the pleadings.

The petition alleges plaintiff's title to the property in question was based either on patents or warranty deeds, copies of which were made exhibits to the petitions, and all of which were pleaded to be of record, and on which muniments of title the plaintiff claims right of possession to all the tracts of land. The supplemental answer of defendants denied all allegations of the petition except what was admitted. They admitted defendants were in possession of the land and admitted plaintiff's record title to the land, and by way of affirmative defense claimed that the property was acquired from funds of the corporation and that the plaintiff held title to the same in trust for the corporation and had no beneficial or equitable interest therein. The warranty deeds set up and relied upon by plaintiff on the face thereof conveyed fee-simple title to Frank Gaines. Section 9698, Okla. Stats. 1931, provides:

"Every estate in land which shall be granted, conveyed or demised by deed or will, shall be deemed an estate in fee simple and of inheritance, unless limited by ex-. press words."

It is not contended that there are any words of limitation in these various deeds conveying title to Frank Gaines. This court, in the case of Herndon v. Shawnee National Bank et al., 105, Okla. 207, 232 P. 432, has held:

"Under section 5272, C. S. 1921 (sec. 9698, Okla. St. 1931), every estate in land which shall be granted, conveyed, or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words, and to overcome this presumption the party contesting it must make out his case by preponderance of the evidence." Hunter v. Murphy, 124 Okla. 207, 212, 255 P. 561; McGlothlin v. Garner, 140 Okla. 227, 282 P. 617; Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207.

This court, in the case of Gentry et al. v. McCurry et al., 134 Okla. 182, 273 P. 222, which is a case in ejectment and in many respects similar to this case, held in the syllabus:

"Under our practice in an ejectment action it is necessary to allege and prove: (1) Title of plaintiff; (2) present right of possession in plaintiff; (3) wrongful possession of defendant.

"In an ejectment action, it is well established that, if the plaintiff relies upon a record title, he must show a regular chain of title from a government, or from some grantor in possession, or from a common source from which each of the litigants claims.

"When the title emanates from the government, as in this case, the right of possession necessarily goes therewith, and, the right of possession having been once shown, the presumption of law is that the title and the right of possession remain in the same person, or his successors in title, until the contrary is shown.

"When the plaintiffs introduced the patent from the government and proved the death of the original allottee or patentee and that they were the lawful heirs of the patentee, their evidence constituted prima facie proof of their right of possession."

Under the facts in this case the sufficiency of the legal or record title of the plaintiff was not questioned. It was admitted. The law does not require a useless procedure, and the legal title of the plaintiff being admitted it was unnecessary for the plaintiff to have offered the deeds in evidence because under the pleadings this would have been a useless procedure. The law presumes that the title and right of possession remains in the person with the legal title, which in this case was admitted, until the contrary is shown. Section 593, Okla. Stats. 1931, provides:

"It shall be sufficient in such action, if the defendant in his answer, deny, generally, the title alleged in the petition, or that he withholds the possession, as the case, may be, but if he deny the title of the plaintiff, possession, by the defendant, shall be taken as admitted."

This court, in construing the above statute, in the case of Gentry v. McCurry, supra, in the body of the opinion, held:

"When the defendants filed an answer denying the title of the plaintiffs, proof that they were in wrongful possession was unnecessary by reason of the provisions of the above statute and the construction placed thereon in the above case."

The defendants, while admitting that the plaintiff had the record title, went further and affirmatively alleged that the title was not held for himself, but was held in trust for the Gaines Brothers Company, a corporation. The defendants, by admitting the record title of the plaintiff but claiming he held it in trust for the corporation, obviated the necessity of proof on the part of plaintiff that the possession of defendants was wrongful. It follows that by the specific, admissions in the answer of the defendants and the presumptions of law following these

admissions, every element in ejectment was established. The plaintiff was, therefore, relieved from the burden of proof or the burden of proceeding, and made the only issue involved in this action the one as to whether the plaintiff held this property in trust for the corporation. This was the only issue not admitted by the pleadings, and it being in the nature of an affirmative defense, the burden was upon the defendants to establish the claim that the plaintiff was holding title to this property in trust for the benefit of the corporation.

This brings us to the second proposition, that the court erred in sustaining the demurrer of the plaintiff to the evidence introduced by the defendants. This court, in the case of Equitable Surety Co. v. Sapp, 77 Okla. 221, 187 P. 917, states the rule in relation to an affirmative defense:

"Where a defendant sets up an affirmative defense, and the plaintiff denies the existence of said fact, the burden of proof is upon the defendant to prove said allegations of his answer." Tancred et al. v. Holuby et al., 124 Okla. 97, 254 P. 75.

Again this court, in the case of Babcock v. Collison et al., 73 Okla. 232, 175 P. 762, has held:

"A resulting trust may be established by parol evidence, but the law requires that the proof necessary to establish it should be of the most satisfactory kind. The onus of establishing a resulting trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive." Craig v. Craig, 114 Okla. 302, 247 P. 67; Hunter v Murphy. et al., 124 Okla. 207, 255 P. 561; Lindsay v. Britt, 138 Okla. 163, 280 P. 609; McGlothlin et al. v. Garner et al., 140 Okla. 227, 282 P. 617; Newbern v. Farris et al., 149 Okla. 74, 299 P. 192; White et al. v. Mayo et al. (N. M.) 299 P 1068; Anson et al. v. Anson et al., 169 Okla. 309, 36 P. (2d) 915; Foster v. Shirley et al., 170 Okla. 373. 40 P. (2d) 1083.

The only defense in this action to the claim of the plaintiff was in effect that the funds with which the lands in question were purchased were corporation funds and that by reason thereof the title thus acquired was of necessity held in trust for the benefit of the corporation that furnished the funds for their purchase. This court has repeatedly held that in an affirmative defense, such as pleaded by the defendants in this action, it is incumbent upon the defendants to assume the burden of proof and to establish a resulting trust by the clearest, most unequivocable and decisive testimony. It was admitted by all parties to this action that the money which went into the purchase of plaintiff's lands was drawn from the corporation's bank account and this constitutes all the substantial testimony favoring a resulting trust. The plaintiff in this action, as a witness on behalf of defendants, testified that the funds withdrawn from the bank and used in the purchase of the land in question were withdrawn in the nature of dividends and were so regarded by both him and his brother. There was no convincing evidence to the contrary. The fact that the deceased brother of plaintiff likewise drew funds from the corporation and invested them in land in his own name, which after his death were listed as property of his estate and assigned to his legal representatives, is a strong corroborative circumstance that the purchase of these lands was a personal and individual investment and was never intended at the time of the purchase, by either of the brothers, to be held in trust for the use and benefit of the corporation. We do not think that the evidence offered by the defendants was of such a clear, unequivocal and decisive nature as to constitute a resulting trust in favor of the defendants.

In the case of G. R. Holcomb Estate Co. v. Burke, 48 P. (2d) 669, a California case just recently decided, we find a state of facts almost identical with this case. Holcomb in his lifetime was extensively engaged in general ranching and stock raising in the state of Nevada. At his death he was possessed of a large amount of real property and requested that it be held together after his death. He left surviving him a wife and nine children. A corporation was organized September 18, 1906, and all his property, both real and personal, was by his heirs transferred and assigned to this corporation. As to the conduct of this corporation, we quote from the body of the opinion:

"They conducted the corporation thereafter as a family affair. Members of the family were the sole owners of its capital stock and served as its directors and officers. No salaries or wages were paid to the officers or directors, nor was any dividend paid to the stockholders. On the other hand, there were paid from the funds of the corporation the living expenses of all members of the family with the possible exception of Mrs. Burke. In this manner not only the general living expenses of the several members of the family were paid by checks drawn on the corporate funds, but there were also paid in the same manner,

doctors' bills, premiums on life insurance policies, furniture, cemetery lots, and even lands and homes for the different families represented in the corporation. The affairs of the corporation were thus carried on without any objection or hindrance by any member of the family or by anybody else until September, 1929."

Further along in the body of the opinion the court says:

"As we have seen, the plaintiff corporation as originally organized and conducted up to the time when a majority of the stock therein was transferred to Messrs. Thatcher, Wiegand, and Turrittin, was a family affair. The members of the Holcomb family had conveyed to the corporation practically all their property. They carried on the affairs of the corporation without salary or wages. No dividends were paid directly, but by common consent of all stockholders in the corporation various sums of money were from time to time paid to or advanced for the use of the several members of the family. In fact, not only their entire living expenses were paid in this manner, but homes and other purchases of real property were made as the needs of the different members of the family required. In this way the several parcels of real property involved in the second, third, fourth, and fifth causes of action were acquired. No objection was ever made by any member of the corporation nor by any creditor thereof, to any of such purchases. * * * No showing has been made that at the time these several transfers were made the capital stock of plaintiff was in any way impaired by the advancements made on account thereof, nor that the rights of the creditors of plaintiff were at the time in any way impaired. Some of these transfers were made to defendants' predecessors more than twenty years, and all more than ten years, before any question as to their validity was raised by any creditor, or any person whatever. In view of this state of the evidence, we are not able to say that the findings of the court to the effect that the purchases of said parcels of land by Sarah A. Holcomb and W. T. Holcomb were made with their own money and for their own use and benefit do not find substantial support in the evidence. 'Where the legal title rests in one person, to establish a resulting trust for the benefit of another against a presumption in favor of the legal title, the evidence must be clear and convincing, especially when an attempt is made to establish a resulting trust after the lapse of many years or where parol evidence alone is relied upon.' Ency. of Evidence, vol. 13, pp. 150, 151. 'It is also true that evidence to establish a trust must be clear, convincing, and satisfactory and practically free from doubt. When is the evidence of that character? The answer must be that

if it has satisfied the conscience of the chancellor before whom the trial was had, and this court cannot say that the evidence clearly preponderates against the finding the requirement must be held to be satisfied.' McQuay v. McQuay, 81 Mont. 311, 263 P. 683, 686. Authorities similar to the above might be multiplied, but we deem the above sufficient for our present purpose. The trial judge, the chancellor before whom the trial was had, was not satisfied that the character of the evidence before him was such that it would justify him in the conscientious discharge of his duty in holding that a trust in the disputed lands had been established in favor of the plaintiff. Our consideration, after a careful study of the record and the law applicable to the facts of the case, coincides with that reached by the trial court."

There is no material difference in the facts in the instant case and in this California case, and we are constrained to accept and adopt the reasoning and conclusions of the California court as applicable to the facts and law of this case.

While the plaintiff in his reply did not specifically allege laches on the part of the defendants, yet he did plead estoppel charging that the plaintiff had had legal and record title to said land for more than 15 years next preceding the filing of this action, all of which was well known to the defendants. In Holcomb v. Burke, supra, with reference to laches, the court said:

"The defense of laches is also relied upon, the same having been set up in one of defendants' affirmative defenses. We think this defense should also be sustained. As we have already stated, all of these transfers took place more than ten years, and some of them 20 years, prior to the present attack upon them. During this time, the Washoe County Bank, the predecessor of the present committee controlling the affairs of the plaintiff, undoubtedly had notice of these transactions. The checks drawn in payment of the several tracts of land involved were drawn upon that bank, and in other respects the evidence indicates that the bank was thoroughly familiar with the financial affairs of the corporation including those now in question. No action was taken, nor was any protest made against the transfers, or against any of them, until the institution of the present action. Those in control of the bank's affairs are bound by the previous acts, or nonaction, of the former officials of the bank. If laches ran against the latter, and in our opinion it did, the effect is the same as to their successors. For this added reason, therefore we, are of the opinion that plaintiff should not succeed in this action."

Practically all the land involved in this case was acquired by the plaintiff 25 years

prior to the institution of the action claiming that it was purchased and held in trust for the corporation. Whether or not the defendants are estopped to make the claim, we do not decide, but the claim is stale and is barred by laches, and the trial court did not commit reversible error in sustaining plaintiff's demurrer and rendering judgment in favor of plaintiff.

The defendants' third and last contention is that the court erred in admitting testimony on cross-examination from the witness, Frank Gaines, as to conversations had with his deceased brother, James Henry Gaines, concerning the withdrawal of funds from the corporation and the purchase of lands in the individal names of the two brothers. At the time of this alleged conversation, the two brothers were the owners of the corporation and were its managing directors. The lands were purchased from individual landowners not connected with the corporation. So far as the evidence is concerned, there was never a formal official meeting of the board of directors and no record kept from its organization in 1907 until the death of James Henry Gaines in 1914. After the corporation was formed the two brothers continued to manage and direct its affairs in the same manner as they had as partners. They would meet at various and sundry places and map out their course of business of which no record was ever kept. These two brothers, as officers and directors of the affairs of the corporation, were, in a sense, in their direction of the business of the corporation, its agents. The defendants, at page 153, of their brief, admit as much, and we quote:

"James Henry Gaines, therefore, would be in the position of an **agent of** the defendant, Gaines Brothers Company."

Under the statute (sec. 271, Okla. St. 1931) the death of an agent of a corporation does not, in specific terms, prevent a party to litigation against the corporation, its successors or assigns, from testifying as to transactions or communications had with such agent. It was held by this court in the case of Hendrix et al. v. Rinehart et al., 167 Okla. 621, 31 P. (2d) 113:

"As a general rule, the agent of a decedent is not so identified with his principal that a transaction with him, or communication to him, is equivalent to a personal transaction or communicatiin with his principal, within the meaning of a statute prohibiting a party to or person interested in the event of a suit against the estate of a deceased from testifying to a personal trans-

action had with the latter. In this view, where the principal is dead, the fact that the agent is also dead is absolutely immaterial, as the statutes protect transactions with the deceased and not with the agent." See 28 R. C. L. 501. Walker v. Hale et al. (Neb.) 139 N. W. 658; Mo. P. Ry. Co. v. Phelps (Kan. App.) 61 P. 672; Carroll v. Chipman (Kan. App.) 57 P. 979; Mendenhall v. School Dist. (Kan.) 90 P. 773; Beaston v. Portland T. & S. Bank (Wash.) 155 P. 162; Northern Bank & T. Co. v. Harmon (Wash.) 217 P. 8; German Ins. Co. v. Frederick (Neb.) 77 N. W. 1106; Mut. L. Ins. Co. v. Oliver (Va.) 28 S. E. 594; Augusta N. S. Co. v. Forlaw (Ga.) 65 S. E. 370; Jamieson v. Auxier (Ia.) 124 N. W. 606.

It is a general rule that statutes which inhibit certain character of testimony will be strictly construed in favor of such testimony. This rule finds expression in the case of Mendenhall v. School Dist. (Kan.) 90 P. 773, where it was held:

"Statutes which exclude persons from testifying will be strictly construed in favor of the witness. Classes of persons not named in the statute will not be excluded by implication even though the reason therefor may seem as strong as those which apply to the persons expressly designated."

See Shawnee State Bank of Topeka v. Royal Union Life Ins. Co. of Des Moines Iowa et al. (Kan.) 274 P. 132.

An examination of the record in this case reveals that the defendants called Frank Gaines as a witness and interrogated him with reference to the understanding he had with the corporation about the use and occupancy of these lands:

"Q. Did you have any understanding with the corporation that it was entitled to the use of the land and to the rents and profits? A. Of course I did or they would not have used it. Q. The corporation paid the taxes on it during all this time, didn't it? A. During all that time. Q. Now how long was it that the corporation, according to your theory of the matter, was to have the possession and the rents and profits from the land that you bought? A. As long as it was not liquidated."

The defendants by going partly into the understandings had and the purpose of the purchase and use of these lands thereby waived the incompetency, if any, of the witness, and authorized the plaintiff on cross-examination to go fully into the subject thus opened up by the defendants in their examination of the plaintiff. This court has held in the case of Secrest v. Nobles, 97 Okla. 277, 223 P. 863:

"The incompetency of a witness to testify

concerning transactions or communications had with a person since deceased is waived by the objecting party eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred, or by calling the witness and showing on direct examination that such transaction or communication occurred." Conwill v. Eldridge et al., 71 Okla. 223, 177 P. 79; In re Dearborn's Estate, McCreath v. Dearborn, 151 Okla. 58, 2 P. (2d) 93.

It was held in the case of Miller v. Consolidated R. O. Co., 23 Fed. (2d) 317:

"A litigant cannot call an adverse or hostile witness and have him testify so long as his testimony is favorable, and then prevent him from making an adverse statement on the ground of his incompetency under the state statute."

It was also held by this court in the case of In re Dearborn's Estate, 151 Okla. 58, 2 P. (2d) 93:

"The incompetency of a witness to testify concerning transactions or communications had with a person since deceased is waived by the objecting party eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred." Conwill v. Eldridge, 71 Okla. 223, 177 P. 79.

It is to be noted that the rule recognized in the foregoing decisions is stated in language which intimates that one who objects to the competency of a witness cannot thereafter cross-examine such witness on the subject-matter of his testimony without waiving his prior objection. Such intimation results from an unfortunate use of language and is incorrect. The cross-examination of a witness as to transactions or conversations with a deceased person does not amount to a waiver of the incompetency of such witness, where the cross-examination is confined to matters brought out on direct examination. But where the cross-examiner himself first enters the forbidden field, his adversary may pursue the inquiry on direct examination, and similarly a party who opens such an objectionable inquiry on direct examination cannot complain that his adversary pursues the same line of inquiry on cross-examination. In other words, the party who first elicits information from an incompetent witness cannot complain of a similar inquiry on cross-examination or re-direct examination by his adversary. See annotations 64 A. L. R. 1158 et seq.

It follows that the defendants themselves having gone into the conversations and understandings of these two brothers, directors of this corporation, with reference to the purchase, use, and occupancy of the lands in question, it was not error on the part of the court to permit, on cross-examination, a full revelation concerning these understandings.

There are several other matters discussed by both parties in their respective briefs, but in view of our conclusions in the matter we think it unnecessary to discuss them.

The action of the trial court is in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys Richard A. Billups, Oliver C. Black, and George G. Barnes in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Billups, and approved by Mr. Black and Mr. Barnes, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.